**ST. PAUL–MERCURY INDEMNITY CO. v. MARTIN et al.**

No. 4227.

United States Court of Appeals Tenth Circuit.

July 6, 1951.

Clyde Watts, Oklahoma City, Okl. (Looney, Watts, Ross, Looney & Smith, Oklahoma City, Okl.), for appellant.

Claude Monnet, Oklahoma City, Okl. (Monnet, Hayes & Bullis, Oklahoma City, Okl.), for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This appeal involves the extent of the liability of two insurance companies under their respective public liability policies of insurance for damages resulting from an automobile accident.

Appellant, St. Paul-Mercury Indemnity Company, issued its policy to James Zigler on a Frazier passenger automobile, covering bodily injury liability not to exceed $5,000 to one person or $10,000 for any one accident. The policy also contained the conventional omnibus clause extending the same coverage to anyone driving the automobile with the permission of the named insured.

Appellee, Central Surety and Insurance Corporation, issued its policy to Eugene Martin on a Chevrolet automobile, covering bodily injury liability not to exceed $20,000 to any one person, or $40,000 for any one accident. This policy contained a provision covering the named insured while operating any private passenger automobile, only to the extent, however, of the excess of liability over the limits of any other valid and collectable insurance available to the insured.

Clara Zigler, wife of the insured Zigler, and Martin were partners in the cafe business at Snyder, Oklahoma, and used the insured cars indiscriminately in the business. On the night of November 19, 1947, while Martin was driving the Zigler car in company with Mrs. Zigler, taking employee Eva Studdard and her husband home, Martin lost control of the car, resulting in serious injury to the Studdards. Mr. and Mrs. Studdard sued the Martins and Ziglers jointly for $24,048 and $17,281, respectively. Martin notified Central of the accident, and Central in turn notified St. Paul, requesting it to undertake defense of the suits. St. Paul denied liability, but secured an offer from the Studdards' attorney to settle both suits for a total of $9,500. Upon receipt of this information, Central secured an agreement from the Studdards' attorney to allocate $6,000 of the offer of settlement to Mr. Studdard, and $3,500 to Mrs. Studdard, together with costs. Central thereupon wrote to St. Paul, reciting the terms of the offer, the serious nature of the injuries, and expressing the view that they should be settled. It called attention to St. Paul's policy limits, tendered its check in the sum of $1,000, representing the excess of St. Paul's liability to Mr. Studdard under its policy, and demanded that St. Paul settle these suits for the amounts offered at the risk of paying the full amount of any judgment which might be rendered, even in excess of its coverage.

Faced with this dilemma, St. Paul brought this declaratory action, setting up the accident, the respective policies, the offers of settlement, and Central's demand of their acceptance. It denied liability under its policy on the grounds that at the time of the accident, Martin was not operating the Zigler automobile with the permission of the insured, but alleged that it had undertaken the investigation and handling of the claims arising out of the accident in good faith, and that it was ready and willing to pay the Studdards the sum of $4750, or one-half of the settlement offer, if Central would pay the remaining one-half. It prayed a declaration to the effect: (1) that Martin is not an insured under St. Paul's policy, and it was therefore not liable to the Studdards thereunder; (2) if Martin is decreed to be an insured, then Central is equally liable under its policy; and (3) if St. Paul be held primarily liable under its policy, it is not obligated in the exercise of good faith or reasonable care to accede to Central's and Martin's demand that it pay $5,000 in the settlement of Mr. Studdard's claim, and $3,500 in settlement of Mrs. Studdard's claim, and that the court correctly adjudge that in the exercise of good faith and reasonable care, Central should contribute the sum of $4,750 toward the settlement of the two cases, or assume full responsibility for any judgment that may be in the case.

While this action was pending, and before Central answered, the two insurance companies entered into a stipulation reciting the settlement of the two cases for $6,000 and $3,500, and agreeing that these settlements were the lowest obtainable; that to avoid the risk of judgment in excess of the amount of the settlement, each had advanced one-half of the settlements "without prejudice to their rights and liabilities in this action. * * * and without prejudice to the issues that are or may be determined in this pending action, and neither party will question the wisdom and propriety of such settlements with Edgar A. Studdard and Eva Studdard." To make the agreement even more explicit, the parties concluded that "The above settlements were made simply to liquidate once and for all the liability to the Studdards and to leave the plaintiff and the Central Surety and Insurance Corporation herein free to litigate herein as to their respective liabilities and claims for reimbursement with reference to the ultimate payment of the $9,500 and court costs, or any part thereof."

Thereafter, Central answered to the effect that Martin was driving the Zigler car with the insured's permission and was therefore an insured within the terms of St. Paul's policy. And, pleading the pertinent terms of its policy, it claimed that St. Paul was primarily liable to the Studdards within the limits of its policy, and that it was liable only in excess thereof. It admitted the settlement of the Studdard cases and the payment of one-half thereof under the stipulation. It specifically denied that under the stipulation or the terms of its policy it was liable to the Studdards or St. Paul in excess of the sum of $1,000, and prayed judgment against St. Paul for the difference between the amount paid under the settlement and its liability in the sum of $3,750, plus $39.20 court costs.

Upon a trial of the case, the policies, the settlements, the stipulation and all pertinent data were admitted in evidence by agreement. St. Paul offered evidence by Studdards' attorney that Martin's liability for the accident was questionable; that St. Paul had a good defense with the possibility of receiving a jury verdict; and that these factors influenced the Studdards' attorney in arriving at his offer of $9,500 settlement for his clients' serious injuries. The trial court sustained an objection to this evidence on the grounds that this issue had been eliminated from the case by the stipulation of the parties, and that the sole question for decision was the liability under their respective insurance contracts.

From other evidence in the case, the court found that at the time of the accident, Martin was driving the Zigler car with the express and implied consent of Zigler, and concluded that he was therefore an insured under the specific terms of St. Paul's policy. This being so, the court held St. Paul liable for the amount of its policy limits of $5,000 to Mr. Studdard and $3,500 to Mrs. Studdard; and decreed that Central should recover the amount paid under the stipulation in excess of $1,000. Judgment was entered accordingly.

On appeal, St. Paul does not contest the ruling of the court to the effect that Martin was an insured under its policy, making it primarily liable, and Central secondarily liable for the excess insurance. We are asked to answer whether in cases of questionable liability, the excess insurer can force the primary insurer to pay its full policy limits in settlement on threat of liability for full amounts of possible judgments if the settlements are refused. The answer is no.

As the primary insurer, St. Paul was required under its relationship to its insured and the excess insurer, to exercise good faith in determining whether an offer of compromise of settlement should be accepted or rejected. It owed them the duty to exercise an honest discretion at the risk of liability beyond its policy limits. American Fidelity & Casualty Co. v. All American Bus Lines, Inc., 10 Cir., 190 F.2d 234, Boling v. New Amsterdam Casualty Co., 173 Okl. 160, 46 P.2d 916; Nat'l Mutual Casualty Co. v. Britt, 203 Okl. 175, 200 P.2d 407; American Fidelity & Casualty Co. v. All American Bus Lines,

458

Inc., 10 Cir., 179 F.2d 7; American Fidelity & Casualty Co. v. G. A. Nichols Co., 10 Cir., 173 F.2d 830. But, it is not required to prophesy or foretell the results of litigation at its peril. If it acts in good faith and without negligence in refusing the proffered settlement, it has fulfilled its duty to its insured, and those in privity with it. American Casualty Co. of Reading, Pa. v. Howard, 4 Cir., 187 F.2d 322.

St. Paul undoubtedly had the right in the exercise of good faith and honest belief in its defense, to refuse the offered settlement, leaving its fate to the jury. Central's demand that the case be settled at the risk of paying any possible judgment did not place any greater burden upon St. Paul than the law imposed. It simply gave notice that Central believed the settlement was reasonable and should be accepted, and placed St. Paul in the position of defending the actions, not at the risk of paying the judgments, but at the risk of doing so negligently and in bad faith—an issue of fact to be determined under all the circumstances.

Here, St. Paul elected to settle the case for the amount of the proffered settlement. If it did so under the threats of Central, it was under no legal compulsion to do so. The argument seems to be that since the parties gave up none of their rights by agreeing to the settlement, and Central had no right to "strong arm" St. Paul into a settlement of the cases, Central thereby became equally liable under its policy. In other words, the court is asked to compel Central to compromise its liability by paying one-half of the settlement, which the parties agreed was reasonable and wise.

The answer is that Central's demand for the settlement of the cases at what it considered reasonable offers imposed no legal liability upon St. Paul. Nor did St. Paul's acquiescence in the demand impose any liability on Central. The parties made the settlement without prejudice to the liability under their respective policies. The court's uncontested ruling has fixed that liability, and the judgment is affirmed.