UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation, Appellant,

v.

TRI-STATE INSURANCE COMPANY, a corporation, Appellee.

No. 6426.

United States Court of Appeals Tenth Circuit.

Dec. 31, 1960.

Bryan W. Tabor, Tulsa, Okl. (Joseph A. Sharp and O. H. (Pat) O'Neal, of Rucker, Tabor, Best, Sharp & Shepherd, Tulsa, Okl., on the brief), for appellant.

Loyd Benefield, Oklahoma City, Okl. (Robert D. Hudson, Tulsa, Okl., on the brief), for appellee.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and RICE, District Judge.

LEWIS, Circuit Judge.

This appeal involves the rights and obligations of two insurance companies as against each other for costs expended in the successful defense of liability claims prosecuted in the state courts of Oklahoma against an insured afforded coverage in each company's respective policy. The action was initiated by the United States Fidelity and Guaranty Company (U.S.F. & G.) as plaintiff below, to recover the sum of $17,449.15 so expended. The District Court for the Northern District of Oklahoma granted the motion of the defendant Tri-State Insurance Company (Tri-State) for summary judgment and, since no factual dispute survived the pre-trial procedures, the parties agree that summary disposition was proper. Our consideration is thus limited to the application of proper law to the undisputed facts of the case.

The incident giving rise to the state court liability claims made against the common insured, Kerr Glass Company (Kerr), was an automobile accident involving a non-owned truck being used by Kerr for a shipment of that company's product in interstate commerce. The U.S.F. & G. policy was issued directly to Kerr as a named insured and is referred to as a comprehensive general automobile liability policy. The Tri-State policy was issued to the owner-operator of the truck, one Barsh, as the named insured but defined "insured" as including "any person or organization legally responsible for the use (of the truck), provided the actual use (of the truck) is by the named insured or with his permission * * *." It is not disputed that Kerr was an additional insured as defined in the Tri-State policy and as applied to the circumstance of the accident premising the claims made against Kerr.

Both policies contained standard indemnification provisions, the policy limit of U.S.F. & G. being $100,000–$200,000 and Tri-State being $10,000–$20,000. Other applicable provisions of both policies provided:

"Insuring Agreements.

"II. Defense, Settlement, Supplementary Payments.

"As respects the insurance afforded by the other terms of this policy the Company shall:

"(a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; * * *.

"The amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the Company in addition to the applicable limit of liability of this policy.

"Conditions

\* \* \* \* \* \*

"13. Other Insurance. If the Insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the Insured, either as an Insured under a policy applicable with respect to such automobile or otherwise."

When claims arose after the accident involving the insured truck Tri-State settled with all claimants on behalf of all the insureds under its policy except Kerr and expended some $10,000 in so doing.[1] Covenants not to sue were taken which did not protect Kerr. Upon institution of the state court actions against Kerr, Tri-State refused to defend and thereupon U.S.F. & G. undertook the sole defense in behalf of Kerr. At the trial court level a judgment against Kerr was obtained in the amount of $76,000. Upon appeal the Supreme Court of Oklahoma relieved Kerr of the judgment in its entirety. See Barsh v. Mullins, Okla., 338 P.2d 845. The amount sought in the instant action is the reasonable cost, in-

cluding attorneys' fees of the defenses made by U.S.F. & G.

In support of its contention that the court erred in granting an adverse summary judgment below, U.S.F. & G. asserts that Tri-State was guilty of bad faith toward both Kerr and toward it as the carrier of excess insurance[2] for Kerr. Emphasis is placed upon Tri-State's failure to settle for or protect Kerr while settling for its other insureds without exhausting its policy limits and its refusal to undertake the defense of Kerr against the claims made. These two aspects of Tri-State's conduct must be separately considered.

■■ An insurance carrier has the duty to use the utmost good faith in the disposition of claims made against its insured. National Mutual Casualty Co. v. Britt, 203 Okl. 175, 200 P.2d 407, 218 P.2d 1039; American Fidelity & Casualty Co. v. All American Bus Lines, 10 Cir., 190 F.2d 234. And this duty is not lessened by the existence of excess insurance but is extended to include the excess carrier within the shelter of the obligation. St. Paul-Mercury Indemnity Co. v. Martin, 10 Cir., 190 F.2d 455. The obligation to the excess carrier is not contractual and is based only upon the duty of the primary carrier to perform the obligation which it alone has assumed, that is, provide primary coverage. Lack of good faith in this regard may extend the primary carrier's obligation beyond the stated policy limit, St. Paul-Mercury Indemnity Co. v. Martin, supra, and extend the point at which the secondary liability of the excess carrier attaches. But contrary to the contentions of U.S.F. & G. these rules are not applicable to the instant case. That company did not pay out any sum under its excess insurance provision. As we have earlier indicated, the claim against Kerr was ultimately held to be without merit

---

[1] The accident was a very serious one in which five were killed and one injured. Tri-State's contribution to the settlement total was less than ten per cent of the

amounts paid on behalf of the various potential defendants.

[2] Since the involved truck was non-owned it was not disputed that U.S.F. & G.'s liability coverage was excess insurance.

and the conduct of Tri-State has not damaged U.S.F. & G. by way of indemnification to its insured.

U.S.F. & G.'s contention in this regard must fail for another and equally patent reason. There is no evidence that Tri-State refused to or even had an opportunity to settle on behalf of Kerr. The fact that Tri-State did settle for some insureds and did not for Kerr is not, as a single circumstance, indicative of bad faith. Claims arising from the same transaction against different persons often warrant separate consideration. Tri-State's obligation was only to exercise an honest discretion on behalf of its insureds and in view of the final result in the Oklahoma courts it may well be that Tri-State could justify a refusal to settle if the opportunity had existed.

■ Tri-State did breach its contract with Kerr by refusing to defend. This obligation existed regardless of the merit or lack of merit of the claim. But again, no contractual relationship existed between Tri-State and U.S.F. & G. and the latter does not claim by subrogation. U.S.F. & G. also had a policy obligation to defend Kerr and this obligation, unlike the secondary liability as an excess carrier for indemnification, was a primary obligation co-existent with that of Tri-State. The agreement to furnish such service, several with the two companies, is distinct from and in addition to the insuring agreement pertaining to liability. The question here thus narrows to whether contribution will lie between two insurance companies when each has a policy containing a defense agreement. The question has been answered in the negative, and we believe properly so, in a number of cases. The duty to defend is personal to each insurer. The obligation is several and the carrier is not entitled to divide the duty nor require contribution from another absent a specific contractual right. Financial Indemnity Co. v. Colonial Ins. Co., 132 Cal.App.2d 207, 281 P.2d 883; Continental Casualty Co. v. Curtis Publishing Co., 3 Cir., 94 F.2d 710; Continental Casualty Co. v. American Fidelity

& Casualty Co., 7 Cir., 275 F.2d 381; Benroth v. Continental Casualty Co., D.C.La., 132 F.Supp. 270; United States F. & G. v. Church, D.C.Cal., 107 F.Supp. 683. Contra, American Surety Co. of N. Y. v. Canal Insurance Co., 4 Cir., 258 F.2d 934.

Affirmed.