**UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff,**

v.

**FEDERATED RURAL ELECTRIC INSURANCE CORPORATION, Defendant.**

No. 98–1124–WEB.

United States District Court, D. Kansas.

Oct. 7, 1999.

Marc A. Powell, Powell & Brewer, LLP, Wichita, KS, for Plaintiff.

Larry B. Spikes, Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Wichita, KS, Michael C. Stewart, Jeff C. Grotta, Stewart & Elder, P.C., Oklahoma City, OK, for Defendant.

*Memorandum and Order*

WESLEY E. BROWN, Senior District Judge.

This is a declaratory judgment action involving two insurance companies and their respective duties to defend an Oklahoma electrical company, Alfalfa Electric Cooperative. Plaintiff USF & G seeks reimbursement from defendant Federated for costs USF & G paid in defending Alfalfa Electric against a lawsuit in Oklahoma state court. The matter is now before the court on the defendant's motion for summary judgment. The court finds oral argument would not assist in deciding the issues presented. For the reasons set forth herein, the court finds that the motion should be denied.

This dispute had its origin in a grass fire on February 22, 1996, in Woods County, Oklahoma. The fire, which caused property losses in Oklahoma and Kansas, started under a truck being operated by O & M Powerline Construction while O & M was performing work it had contracted to do

for Alfalfa Electric. Both O & M and Alfalfa Electric were sued in the District Court for Woods County, Oklahoma, by landowners who sustained losses from the fire. The case was styled *Bouziden v. Alfalfa Electric Cooperative,* CJ–96–19.

At the time of the fire, plaintiff USF & G had in effect an insurance policy covering O & M, and Alfalfa Electric was included as an additional insured under the policy. Defendant Federated also had a policy covering Alfalfa Electric. USF & G initially undertook the defense of Alfalfa Electric in the *Bouziden* case. After USF & G subsequently deposited its policy limits into court in an interpleader action and obtained a judgment dismissing it, it ceased its defense of Alfalfa Electric. Defendant Federated then assumed Alfalfa Electric's defense. USF & G now seeks to recover $172,419 in costs it incurred defending Alfalfa Electric. USF & G seeks to recover under theories of contribution and equitable subrogation. Federated argues that Oklahoma law, which both parties agree governs the dispute, precludes recovery under these theories.

## I. *Facts.*

1. USF & G issued insurance policy No. ICP 300249060 00. Under the policy, O & M was the named insured. Alfalfa Electric was added to the policy as an "additional insured" under an endorsement.

2. Under the insurance coverage provided by the USF & G policy, USF & G was contractually obligated to provide a defense for the claims against both O & M and Alfalfa Electric arising out of the February 22, 1996 fire, including the claims asserted in *Bouziden v. Alfalfa Electric Coop.,* No. CJ–96–19, District Court of Oklahoma for Woods County.

3. The USF & G policy was issued and delivered in Oklahoma by an Oklahoma agent.

4. Both insureds under the USF & G policy are Oklahoma corporations.

5. All premiums on the USF & G policy were paid in Oklahoma.

6. A certificate of insurance was issued and delivered by USF & G to Alfalfa Electric certifying that Alfalfa Electric was an additional insured under the policy.

7. Federated insurance policy No. 35 ARB 001 was issued in the State of Oklahoma to Alfalfa Electric, an Oklahoma corporation.

8. The fire giving rise to the *Bouziden* case started in Oklahoma, and the lawsuit evolving out of the fire was in the Oklahoma State District Court for Woods County.

9. In the *Bouziden* case, at least some of the claims against Alfalfa Electric arose out of the actions of O & M.

10. All of Alfalfa Electric's defense costs in the *Bouziden* case were paid either by USF & G or Federated.

11. After filing an interpleader action, depositing its policy limits into court, and obtaining a judgment discharging it from further liability to the Woods class and other landowners, USF & G withdrew the defense it was providing Alfalfa Electric.

12. Federated paid all of Alfalfa Electric's defense costs after USF & G withdrew its defense.

13. Federated's policy to Alfalfa Electric is entitled "All–Risk Blanket Policy for Rural Electric and Rural Telephone Systems." Section II of the policy, which is entitled "Automobile and General Liability Insurance," provides that Federated will pay on behalf of the policyholder all sums up to the limits of liability which the policyholder becomes obligated to pay as damages because of an occurrence causing property damage. It further provides that Federated has the duty to defend any suit against the policyholder to which the policy applies. It contains a provision entitled "Excess Insurance—Hired and Non–Owned Automobiles," which provides, "[w]ith respect to a hired or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance." It also contains a section entitled "General Conditions Applying To

This Policy," Subsection "H" on page 13 of the policy, which provides in part:

H. OTHER INSURANCE—This insurance is primary insurance, except when stated to apply in excess of, or to be contingent upon, the absence of other insurance. When both this insurance and the other insurance apply to the loss on the same basis, whether primary, excess or contingent Federated shall not be liable under this policy for a greater proportion of such loss than the applicable Limit of Liability under this policy for such loss bears to the total applicable Limit of Liability of all valid and collectible insurance against such loss.

14. USF & G's policy insuring Alfalfa Electric contains a "Commercial General Liability" portion and a "Business Auto" portion. The Commercial General Liability portion provides that USF & G will pay sums that the insured becomes obligated to pay as damages because of property damage to which the insurance applies. It provides that USF & G has a duty to defend against any suit seeking those damages. It further provides that USF & G's duty to defend ends when it has paid the applicable limit of insurance. The Commercial General Liability portion contains an exclusion for property damage arising out of the use of any "auto" owned or operated by any insured. The Business Auto portion of the policy obligates USF & G to pay sums an insured is obligated to pay as damages because of property damage caused by an accident resulting from use of a covered auto. It provides that USF & G has a duty to defend any insured against a suit seeking such damages, and that the duty to defend ends when the liability limit has been exhausted.

## II. *Arguments.*

■ Federated argues that Oklahoma law prohibits contribution among insurers for defense costs. Federated points out that in *United States Fidelity & Guar. Co. v. Tri–State Ins. Co.*, 285 F.2d 579 (10th Cir.1960), the Tenth Circuit rejected a claim for contribution by one insurer against another, stating:

The agreement to furnish such service, several with the two companies, is distinct from and in addition to the insuring agreement pertaining to liability. The question here thus narrows to whether contribution will lie between two insurance companies when each has a policy containing a defense agreement. The question has been answered in the negative, and we believe properly so, in a number of cases. The duty to defend is personal to each insurer. The obligation is several and the carrier is not entitled to divide the duty nor require contribution from another absent a specific contractual right.

*Id.* at 582 (citing additional cases). The Tenth Circuit's decision was subsequently relied upon by the Oklahoma Supreme Court in *The Fidelity & Cas. Co. of New York v. Ohio Cas. Ins. Co.*, 482 P.2d 924 (Okla.1971), where the court held that one insurer had no right of contribution against another absent a specific contractual right. Based upon these cases and their progeny, Federated argues that USF & G's claim is barred as a matter of law.

In response, USF & G argues that the Oklahoma Supreme Court has recognized an equitable right of subrogation in circumstances analogous to this case. *Citing Republic Underwriters Ins. Co. v. Fire Ins. Exchange*, 655 P.2d 544 (Okla.1982). USF & G also points out that the case law recognizing a right of equitable contribution in other jurisdictions has developed since 1971, and argues that Oklahoma would now recognize such a claim.

## III. *Discussion.*

■ A federal court sitting in diversity must apply the substantive law of the forum state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Kansas law, the law of the place where a contract was made governs the contract's interpretation. *Rigby v. Clinical Reference Laboratory, Inc.*, 995 F.Supp. 1217, 1222 (D.Kan.1998). There appears to be no dispute that the

insurance contracts at issue were made in Oklahoma, and the court thus concludes Oklahoma law governs the dispute.

The central issue on summary judgment is whether USF & G's claims are precluded by *The Fidelity & Cas. Co. of New York v. Ohio Cas. Ins. Co.*, 482 P.2d 924 (Okla. 1971). Although at first glance that would appear to be the case, the court concludes that *Fidelity* does not bar USF & G's claim for equitable subrogation. *Fidelity* was based primarily upon the Tenth Circuit's decision in *U.S. Fidelity & Guaranty Co. v. Tri–State,* supra, and the Oklahoma Supreme Court quoted extensively from that case to support its holding. Although both of these cases found that the lack of a specific contractual right was fatal to one insurer's claim for contribution against another, the Tenth Circuit made explicit that the plaintiff in U.S. *Fidelity & Guaranty Co. v. Tri–State* did "not claim by subrogation." *Id.* at 582. Nor was any mention of subrogation made by the Oklahoma Supreme Court in *Fidelity.* Under the circumstances, the court concludes that the question of whether a claim for equitable subrogation could be asserted for defense costs was not before the court in *Fidelity.*[1]

■ Because Oklahoma courts have not expressly addressed the issue, this court's obligation is to predict how the Oklahoma Supreme Court would rule on the question. *See Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir.1994). The court concludes, for several reasons, that Oklahoma would recognize such a claim. In a decision subsequent to *Fidelity,* the Oklahoma Supreme Court explained the nature of a subrogation claim:

> The doctrine of legal subrogation as recognized in this state is broad enough to place the responsibility for payment where it should, in equity and good conscience, finally repose, ... The principle of legal subrogation has been characterized in this jurisdiction as a classic remedy in equity; a fluid concept depending

on each case's facts and circumstances based upon the natural justice of placing the ultimate responsibility for a loss where it ought finally to repose without the form of a rigid rule of law. [cite omitted]. Subrogation is a creature of equity intended to achieve the natural justice of placing the burden where it ought to rest, and unlike a fixed rule of law, subrogation is pliable and capable of being molded to attain justice to compel the ultimate discharge of a debt or obligation by the party who in good conscience ought to pay it.

*Republic Underwriters Ins. Co. v. Fire Ins. Exchange,* 655 P.2d 544, 547 (Okla. 1982). Although it is true that *Republic Underwriters* dealt with apportioning responsibility for damages, rather than defense costs, there is no apparent reason why such a "pliable" and "fluid concept" as subrogation could not be applied to a claim for reimbursement of defense costs against one who is contractually obligated to provide a defense to the insured. In fact, in a 1992 unpublished decision the Tenth Circuit concluded that Oklahoma would recognize an equitable subrogation claim for defense costs, and it remanded the case to permit an insurer to amend its complaint to assert the claim. *See Farmers Alliance Ins. Co. v. Commercial Union Ins. Co.,* 972 F.2d 356 (Table), 1992 WL 181977 (10th Cir.1992). The recognition of such a rule by Oklahoma would hardly be surprising, as most other jurisdictions now appear to permit this type of claim. *See e.g., National Cas. Co. v. Great Southwest Fire Ins. Co.,* 833 P.2d 741, 747 (Colo.1992) (noting that the majority rule is to permit reimbursement of defense costs).

Policy considerations also weigh in favor of Oklahoma recognizing an equitable subrogation claim for reimbursement of defense costs. The cases denying such claims have come under heavy criticism from courts and commentators alike. One

---

1. Additionally, in *Fidelity* the Oklahoma Supreme Court did not discuss the effect, if any, of the presence of "other insurance" clauses.

Each of the policies at issue in this case contains such a clause.

leading commentator assessed such decisions as follows:

These holdings are indefensible. The courts are ignoring realities and encouraging insurers who are not concerned with their insureds in the hope that someone else will step into the breach. It also ignores the fact that excess and other insurers are third party beneficiaries under the basic contracts of insurance and should be able to recover, either under a theory of equitable subrogation, contracts or torts, any expenses incurred under the circumstances. Further, as a matter of public policy, courts should be demanding that insurers give prompt defense of claims to policyholders rather than to tolerate the shifting of responsibility with such impunity.

7C Appleman, *Insurance Law and Practice* § 4691 at 278 (1979). As noted by Judge Sharp in dissent in *Continental Cas. Co. v. United Pac. Ins. Co.*, 637 So.2d 270 (Fla.App. 5 Dist.1994), a rule prohibiting recovery of defense costs under these circumstances encourages insurers to play "chicken," with an irresponsible insurer knowing it can avoid paying such costs by waiting until another insurer feels obligated to provide the defense. Thus, the better-reasoned position would seem to be to permit apportionment of defense costs when it is equitable to do so.

Under the circumstances, the court concludes the Oklahoma Supreme Court would likely extend the reasoning of *Republic Underwriters* to permit an equitable subrogation claim for reimbursement of defense costs. The court therefore rejects Federated's argument that it is entitled to judgment as a matter of law.

One additional point bears mention at this stage of the proceedings. Each party has obliquely argued in its brief that its insurance is excess in nature and that the other party's is primary. The court recognizes that the respective relationship between the insurers may affect the equities of plaintiff's claim for reimbursement (*see e.g., Guaranty Nat. Ins. Co. v. Am. Motor-*

*ists Ins. Co.*, 758 F.Supp. 1394, 1395 (D.Mont.1991)). Any such issue, however, is immaterial insofar as the defendant's motion for summary judgment is concerned. Likewise, any issue as what formula should be used to apportion costs is immaterial to the motion for summary judgment.

### IV. *Defendant's Motion to Strike.*

The court has considered defendant Federated's motion to strike plaintiff's witness and exhibits lists on the grounds that these lists were not timely provided under the court's prior scheduling order. The court rejects that motion, however, on the grounds that Federated makes no showing of unfair surprise or prejudice from this alleged failure.

### V. *Conclusion.*

Defendant Federated's Motion for Summary Judgment (Doc. 14) is hereby DENIED. Defendant Federated's Motion to Strike (Doc. 20) is also DENIED. IT IS SO ORDERED this 7th day of October, 1999, at Wichita, Ks.