295 F.2d 513
 WEST AMERICAN INSURANCE COMPANY, a corporation, Appellant,
v.
ALLSTATE INSURANCE COMPANY, Ray Hartgraves, James Mayes,
Ronald Martin, Victor Holman, John Goss, Linda Pennington,
Roy Bottoms, Danny Ratliff, William Fender, Mary J.
Harvison, George Brandt, John Fender and Lawrence Blevins, Appellees.
 No. 6733.
 United States Court of Appeals Tenth Circuit.
 Oct. 25, 1961.
 
 David H. Sanders, Tulsa, Okl. (Bert McElroy and Fred A. Smith, Tulsa, Okl., On the brief), for appellant.
 Richard D. Gibbon (of Covington & Gibbon), Tulsa, Okl., for Allstate Ins. Co., appellee.
 Joseph A. Sharp (of Rucker, Tabor, Best, Sharp & Shepherd), Tulsa, Okl. (K. D. Bailey, Okmulgee, Okl., Truman B. Rucker and O.H. 'Pat' O'Neal, Tulsa, Okl., on the brief), for Ray Hartgraves, James Mayes, Ronald Martin and John Goss, appellees.
 Before PHILLIPS, PICKETT and HILL, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 West American Insurance Company issued a public liability policy to Alwrence Blevins of Tulsa, Oklahoma covering a 1957 Mercury automobile. The policy contained the standard provision that the coverage should include 'any other person using such automobile, provided the actual use thereof is with the permission of the named insured.' Blevins loaned the Mercury to John Fender, then age 17, who, while driving the insured automobile, was involved in an accident in which a number of persons were injured. Allstate Insurance Company had issued to young Fender's parents, on their automobile, its liability policy which provided coverage to members of the family while temporarily driving an automobile other than the insured car. With respect to the use of a temporarily substituted automobile or a non-owned automobile Allstate limited its liability to 'excess insurance over any other collectible insurance.'
 
 
 2
 West American denied liability on its policy, and refused to defend that claims against Fender. Allstate brought this declaratory judgment action for a determination that West American was primarily liable for the damages caused by young Fender's negligence, to the extent of its policy, and that it was obligated to defend the claims brought against him.
 
 
 3
 It was admitted that Blevins gave permission to young Fender to use his automobile on the night of the accident. It is contended, however, that at the time of the accident Fender had departed from the permitted use of the vehicle and was outside the scope of the permission granted. Allstate and other appellees contended that the permission to use the automobile was general in scope and not restricted in any manner. The trial court found that Blevins granted to young Fender general permission to use the car, and held that West American was obligated to defend Fender against all claims asserted against him arising out of the collision, and that it should pay on his behalf all sums which he should become legally obligated to pay as damages, within the limitations of its policy. It was further held that Allstate was liable for all sums in excess of West American's liability, within the limitations of its policy. West American appeals.
 
 
 4
 The substance of Fender's testimony was that he discussed with Blevins the possibility of using his automobile for the week end, and Bleving agreed to loan it to him for that period if it was satisfactory to Fender's parents. The matter was discussed with his parents who objected to his having the car for the full week end, and authorized him to use it for one night only. He selected Friday night, and told his parents that he, with other young people, intended to drive to a particular drive-in theater near their neighborhood. The car was not driven to the theater, and the accident occurred several miles from there. Blevins testified that he had agreed to loan the automobile for the week end without any restrictions, subject to the approval of Fender's parents; that after the discussion with the parents it was understood that the car was to be driven to a particular drive-in theater; that the only restriction on the use was the limitation to one evening; and that he had no interest in where the vehicle was driven. In answer to a question by the court, Blevins acknowledged that he was perfectly willing, with the concurrence of Fender's parents, to let Fender have the car for one evening.[1] His only instructions were that no one except Fender was to drive, and that the car was to be returned and parked at the designated place. West American admits that its policy would cover Fender if at the time of the accident the actual use of the automobile was with the permission of the insured, Blevins. See Employers Cas. Co. v. Williamson, 10 Cir., 179 F.2d 11; Indemnity Ins. Co. of North America v. Sanders, 169 Okl. 378, 36 P.2d 271. It appears quite clearly from the evidence that Blevins' permission to use the car was general in nature, and that the only limitation placed on its use was the one which restricted the use to one evening imposed for the purpose of enabling Fender's parents to control the activities of their son. The court's finding is supported by substantial evidence, and must be sustained. Fed.R.Civ.P. 52(a), 28 U.S.C.A. E.g., Denver United States Nat. Bank v. Asbell Bros. Const., 10 Cir., 294 F.2d 289; Lindsey v. Oregon-Washington Plywood Co., 10 Cir., 287 F.2d 710; Wilsey-Bennett Trucking Co. v. Frost, 10 Cir.,275 F.2d 144; Wight v. Chandler, 10 Cir., 264 F.2d 249; Federal Security Ins. Co. v. Smith, 10 Cir., 259 F.2d 294.
 
 
 5
 West American argues that the trial court's judgment requiring it to defend claims for damages caused by the collision is contrary to United States Fidelity & Guaranty Co. v. Tri-State Ins. Co., 10 Cir., 285 F.2d 579. We find no such conflict. In that case it was held that where two insurance companies are obligated by their policies to defend the same insured, one cannot recover its expenditures for the defense, or any part thereof, from the other. The policies of Allstate and West American require the insurer to defend in actions brought against their insured for damages payable under the terms of the policy. The judgment in this case is limited to a determination of the relative liability obligations of the insurance companies and whether West American has an obligation to defend the action. It holds that West American has the primary obligation, within the limits of its policy, to pay on behalf of Fender all claims which he shall become legally obligated to pay as damages caused by the collision in question, and that Allstate is obligated to pay, within the limits of its policy, only the sums found to be due the claimants in excess of West American's liability. These provisions are not affected by the 'other insurance' clauses of the policies which provide that if the insured has other insurance against the loss, the insurer shall be liable only pro rata. Citizens Mut. Auto. Ins. Co. v. Liberty Mut. Ins. Co., 6 Cir., 273 F.2d 189; American Sur. Co. of N.Y. v. Canal Ins. Co., 4 Cir., 258 F.2d 934; United Services Auto. Ass'n v. Russom, 5 Cir., 241 F.2d 296; 8 Appleman, Insurance Law and Practice 4914 (1942). It was also adjudged that, under the terms of its policy, West American is obligated to defend the claims asserted against Fender, but the trial court did not determine that Allstate's obligation to defend was inoperative or secondary. Although Allstate's liability in a case where the insured is operating a non-owned automobile is for excess coverage over and above any other collectible insurance, the obligation to defend in such a case is not so limited. This, we think, is the reasoning of United States Fidelity & Guaranty Co. v. Tri-State Ins. Co., supra,[2] and this judgment is consistent with that reasoning.
 
 
 6
 Neither of the insurance companies deny their contract obligations. Each policy contained a provision requiring the insurer to defend all claims against the insured involving matters covered by the policy. The principal dispute in the trial court was whether West American should be absolved entirely from liability, including the obligation to defend, because the automobile of its insured was not being operated by a third party within the scope of the owner's permission. Allstate alleged that Fender was driving the Bleving car with the insured's permission, and was covered as an additional insured by West American's policy. As Allstate's policy provided only for excess insurance in such cases, this created an actual controversy, within the meaning of 28 U.S.C.A. 2201, between the two insurance companies as to who had the primary liability for the damages which, together with West American's obligation to defend, could be determined in a declaratory judgment action. See Bennett v. Preferred Acc. Ins. Co., 10 Cir., 192 F.2d 748; St. Paul-Mercury Indem. Co. v. Martin, 10 Cir., 190 F.2d 455.
 
 
 7
 There is no merit to the contention that West American is not liable on its policy because Belevins and the Fenders agreed that the insurance on Fender's family car, and not the policy held by Blevins, should cover young Fender's use of the Blevins car. Even if the terms of insurance policies could be varied by an understanding between the policy holders, there is not evidence of such an agreement here. In the discussion between Blevins and the Fenders, Blevins stated that his policy did not cover drivers under the age of 25 years, while the Fenders said their policy would cover their son while driving another car. This conversation was not sufficient to constitute an agreement between them as to which insurance policy would be in effect during the period that young Fender was using the Blevins automobile.
 
 
 8
 Affirmed.
 
 
 
 [1]
 On examination by the court Blevins testified:
 'The Court: Now did you personally put any limitation on them as to where they could go that evening? A. They told me they were going to the show and I told them when they returned, bring the car in Roland Ragan's yard.
 'The Court' Well, this is what I want: I understand they told you they were going to the show. But you were perfectly willing to let them have the car and intended to let them have the car for the use that evening, Mr. Fender? A. Yes, sir, with permission of his mother and dad.
 'The Court: Did you have any interest in where they were going to go with the car? A. Well, all I knew they told me they were going to the show, sir.
 'The Court: They told you they were going to the show? A. Yes, sir.
 'The Court: You didn't tell them they must go to the show and nowhere else? A. No, sir, I didn't tell them that, sir.'
 
 
 [2]
 In United States Fidelity & Guaranty Co. v. Tri-State Ins. Co., 10 Cir., 285 F.2d 579, 582, the court said:
 'Tri-State did breach its contract with Kerr by refusing to defend. This obligation existed regardless of the merit or lack of merit of the claim. But again, no contractual relationship existed between Tri-State and U.S.F. & G. and the latter does not claim by subrogation. U.S.F. & G. also had a policy obligation to defend Kerr and this obligation, unlike the secondary liability as an excess carrier for indemnification, was a primary obligation co-existent with that of Tri-State. The agreement to furnish such service, several with the two companies, is distinct from and in addition to the insuring agreement pertaining to liability. The question here thus narrows to whether contribution will lie between two insurance companies when each has a policy containing a defense agreement. The question has been answered in the negative, and we believe properly so, in a number of cases. The duty to defend is personal to each insurer. The obligation is several and the carrier is not entitled to divide the duty nor require contribution from another absent a specific contractual right.