FUEL ECONOMY ENGINEERING COM-
PANY, Plaintiff,

v.

NATIONAL FIRE INSURANCE COM-
PANY OF HARTFORD et al.,
Defendants.

Civ. No. 3-61-25.

United States District Court
D. Minnesota,
Third Division.

May 13, 1963.

———◆———

Firestone, Fink, Krawetz, Miley &
O'Neill, by Linn J. Firestone and Israel
E. Krawetz, St. Paul, Minn., for plain-
tiff.

Faegre & Benson, by Wright W.
Brooks, Minneapolis, Minn., for defend-
ants Orion Ins. Co., Limited, English &
American Ins. Co., Limited, Excess Ins.
Co., Limited, and The Underwriting
Members of Lloyd's.

DONOVAN, District Judge.

Plaintiff seeks a declaratory judgment
against The Orion Insurance Company
Limited, English and American Insurance
Company Limited, Excess Insurance
Company Limited, and The Underwrit-
ing Members of Lloyd's (hereinafter re-
ferred to as the English Companies)
arising out of a dispute over coverage
of an insurance policy. Plaintiff is en-
gaged in the business of construction and
installation of electrical power plants.
While engaged in the installation of a
power plant at Alma, Wisconsin, for
Dairyland Power Cooperative (herein-
after referred to as Dairyland), plain-
tiff did some welding on or around cer-
tain turbines. When these turbines were
tested it was discovered that welding slag
had fallen into the turbines and caused
extensive damage. As a result of this
accident, Dairyland withheld about $60,-
000.00 owing to the plaintiff. National
Fire Insurance Company of Hartford
(hereinafter referred to as National)
had issued its Inland Transit Floater poli-
cy, and Travelers Insurance Company
(hereinafter referred to as Travelers)
had issued its comprehensive general li-
ability policy to the plaintiff. (National
and Travelers are referred to as the un-
derlying insurers.) The English Com-
panies carried the excess insurance. The
English Companies' policy stated that
they would pay claims, subject to certain
limitations, to the extent that they ex-
ceeded the limits of the policies of the
underlying insurers.

Plaintiff duly notified the respective insurers of the Dairyland claim, but the underlying insurers each denied liability because of a dispute over the care, custody and control of the turbine at the time of the accident. Plaintiff started this action to determine coverage. A settlement was reached by the underlying insurers and the action was dismissed as to all defendants except the English Companies. The remaining defendants have paid the excess claim and all that remains to be determined is whether plaintiff can recover certain expenses which it incurred.

These expenses fall into three categories: (a) investigation expenses, (b) attorneys' fees and (c) interest.

The defendant has conceded liability in the first category in the amount of $436.15, and plaintiff has acquiesced in the elimination of the remaining $88.40. This resolves the claim for investigation expenses.

The second category concerns certain attorneys' fees which were incurred by plaintiff. These fees are broken down into those relating to the investigation of the accident, $2,500.00, and those relating to the bringing of this action, $2,-500.00. When the accident occurred, plaintiff notified all the insurers but the underlying insurers each denied liability and refused to investigate. Plaintiff then had its attorneys conduct an investigation and attempt to negotiate a settlement with the insurers and Dairyland. Plaintiff claims that the fees relating to the investigation are a part of the ultimate net loss as defined in the policy.[1] The English Companies admit that the fees for investigation arose out of an occurrence covered by the policy, but claim that they were collectible from Travelers and were therefore excluded by the last sentence in the definition of ultimate net loss.[2] They assert that plaintiff entered into a general settlement with Travelers and that the claim for attorneys' fees was thereby satisfied. Plaintiff and defendants have not cited a Minnesota case in point. Nor has the Court been successful in finding a case directly in point. It is the generally accepted rule that insurance contracts should be interpreted according to the plain meaning of the words.[3] Both parties cite Tomlyanovich in support of this contention.

██ Under the policy issued by the English Companies, plaintiff was under an obligation to investigate, settle or defend all claims and the English Companies could not be called upon to assume charge of any claim. The insurer could associate in the defense of a claim if it so desired.[4] In most instances, the underlying insurers would handle the claim. However, where the claim exceeds the limits of the underlying policies, the interests of plaintiff and the excess insurers demand that an investigation for the purpose of determining excess take place. Such an investigation would be proper whether the underlying insurers investigated or not, since the interests involved would be different. This is the apparent reason for the inclusion of attorneys' fees in the ultimate net loss clause of the policy. These attorneys' fees were incurred in the protection of the rights of the English Companies. In this instance, the amount withheld by Dairyland was more than twice the limits of the underlying policies, and there was in fact excess liability. Where ambiguity exists, construction should be in favor of the insured.[5] Plaintiff should recover for attorneys' fees insofar as they relate to investigation. The English Companies do not dispute the amount as testified to

1. See plaintiff's exhibit 1, "5. Ultimate Net Loss."

2. Note 1 supra.

3. Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S.Ct. 230, 76 L.Ed. 416; Tomlyanovich v. Tomlyanovich (1953), 239 Minn. 250, 58 N.W.2d 855.

4. See plaintiff's exhibit 1, "F. Assistance And Co-operation."

5. Freyberg v. London & Scottish Assurance Corp. (1956), 246 Minn. 417, 75 N.W.2d 203.

by plaintiff's attorney, and plaintiff should recover $2,500.00.

 The attorneys' fees relating to this action are claimed by plaintiff because they result indirectly from the accident. Plaintiff shows that the type of dispute that arose is reasonably foreseeable. The English Companies point out that the expenses recoverable are those paid as a consequence of any occurrence covered by the policy.[6] The coverage clause[7] limits liability to "damages, direct or consequential and expenses." The expenses in this instance are not directly caused by the covered occurrence, but result from the dispute between the underlying insurers over liability. The meaning of the policy is plain, and a construction contrary to such meaning should not be placed upon this policy.[8] Plaintiff should not recover for attorneys' fees which relate to this action.

 The last item of expense claimed by plaintiff is interest on the money withheld by Dairyland pending settlement of the claim. Plaintiff claims that it is entitled to interest on the money withheld because it was deprived of the use of this money. It cites cases that hold that interest is due upon money withheld. The question here, however, is whether this is recoverable under the insurance contract. No cases have been cited by the parties interpreting this clause of the insurance contract. The English Companies assert that this is not an expense covered in the ultimate net loss provision of the policy. This provision states " * * * all sums paid as * * * interest * * * " are included. Plaintiff did not pay any interest. It was deprived of the use of the money withheld by Dairyland. The language of the policy indicates that only sums paid are covered by the ultimate net loss clause and any other construction would be contrary to the plain meaning of the words used. Such construction is not allowed.[9] Therefore, plaintiff is not entitled to recover interest on the money withheld.

Plaintiff is entitled to recover $436.15 as agreed upon by the parties, and $2,500.00 for attorneys' fees.

Plaintiff may submit findings of fact, conclusions of law, order for and form of judgment consistent with the foregoing.

It is so ordered.

The parties may have an exception.

---

6. Note 1 supra.

7. Plaintiff's exhibit 1, "I. Coverage."

