ST. PAUL MERCURY INSURANCE COMPANY, Appellant,

v.

The UNDERWRITERS AT LLOYDS OF LONDON, ENGLAND, Appellee.

No. 8393.

United States Court of Appeals
Tenth Circuit.

Sept. 12, 1966.

———◆———

James W. Shepherd, Oklahoma City, Okl. (Foliart, Shepherd, McPherren & Mills, Oklahoma City, Okl., of counsel, on the brief), for appellant.

Clayton B. Pierce, Oklahoma City, Okl., for appellee.

Before PHILLIPS, PICKETT and SETH, Circuit Judges.

SETH, Circuit Judge.

This is an action between two insurance companies each of which had issued a policy covering John W. Bennett for the same automobile liability loss. The plaintiff-appellant, St. Paul Mercury Insurance Company, satisfied judgments in part, settled suits against the insured, and incurred expenses in defending him. It here seeks to recover from Underwriters at Lloyds of London, England, the appellee, the sums so paid or to have the amounts prorated between the two companies.

A third company defended the initial litigation against Bennett but it discharged its liability as a primary insurer by paying its policy limit in partial satisfaction of a judgment against Bennett.

The trial court found in favor of appellee, holding that it did not have to participate in the loss. Appellant then took this appeal.

The record shows that John W. Bennett, while driving a car owned by his employer, McAlester Fuel Company, had a collision with a car driven by Gilbert

Whetstone causing injuries to the occupants of the Whetstone car. Bennett was the defendant in a series of suits by the injured Whetstones and by an occupant with him in the company car. Three insurance policies by separate companies covered Bennett's operation of the company car:

(1) St. Paul Mercury Insurance Company, the appellant, had issued a policy to Bennett which described the personal car of Bennett, and also covered his operation of cars not owned by him.

(2) Liberty Mutual Insurance Company had issued a policy to McAlester Fuel Company which included Bennett as an additional insured. This company defended the Willa Dean Whetstone suit against Bennett and paid the full amount of its coverage to satisfy in part the judgment then rendered against Bennett. This company is not a party to this suit.

(3) The third company involved, and the defendant-appellee here, is The Underwriters at Lloyds of London, England. This group had also issued a policy to McAlester Fuel Company to cover losses above the coverage of primary insurance and under $125,-000.00; and another separate similar policy to cover losses between $125,-000.00 and $525,000.00.

The suit by Willa Dean Whetstone, the initial against Bennett, was defended by Liberty Mutual, as mentioned above, and St. Paul Mercury paid part of the judgment. St. Paul Mercury also defended the later suits above Liberty's limits and paid some $20,618.77 in settling these claims and in defending them. During these proceedings Lloyds took the position that it was not an insurer of Bennett. This position was litigated in a garnishment proceeding and this court in Whetstone v. Orion Insurance Co., 302 F.2d 15 (10th Cir.), held that Lloyds was an insurer of Bennett. This holding came after the above payments were made by St. Paul Mercury.

St. Paul Mercury in this action against Lloyds asserts that either the Lloyds' policies cover the entire amount above the Liberty Mutual coverage, or that both the policies of St. Paul and of Lloyds are excess insurance and the loss should be apportioned between them. The trial court gave judgment for the defendant Lloyds on the findings that only the Lloyds policy was for excess coverage; that the St. Paul policy covered Bennett for the operation of the non-owned automobile; that the St. Paul policy was "other insurance" under the Lloyds' policy, and the amounts St. Paul paid were within its policy limits. No choice of law issues are raised by the parties and the submission has been on the basis that the pertinent general rules of insurance law apply. No locally applicable particular variations have been presented.

The St. Paul policy was issued to Bennett personally, and he was the named insured; however, at the time of the accident he was not driving his own car but the company car, a "non-owned automobile." Under the terms of his policy if there was in existence other insurance for the loss, and if the insured was driving a non-owned car, " * * * the insurance * * * shall be excess insurance over any other valid and collectible insurance." "Other insurance" within the meaning of this phrase was at least the Liberty Mutual policy issued to the owner of the car, McAlester Fuel Company, and recognized as primary insurance. Thus it would appear by the St. Paul policy terms its coverage was clearly excess above the coverage of Liberty Mutual.

The Lloyds' policy No. 1925 provides the insurers shall be liable for the "excess" of $25,000.00 "ultimate net loss" in respect to any one occurrence and then up to a further $100,000.00. The policy expressly states that the " * * * Assured, if they so desire, may effect Primary Insurances for amounts in excess of those specified in Paragraph 5 [$25,-000.00] as being the amounts of which

this Policy pays the excess * * *." The policy defines "ultimate net loss" as: "The term 'ultimate net loss' shall be understood to mean the sums actually paid in cash by the Assured in the settlement of losses for which the Assured is liable after making proper deductions for all recoveries, salvages and other insurances whether collectible or not * * *." The policy states it is to indemnify McAlester Fuel Company " * * * for any and all sums which the Assured shall be legally liable to pay, and shall pay or by final judgment be adjudged to pay * * *."

■ What were the relative positions of the Lloyds coverage, the Liberty Mutual coverage, and the St. Paul coverage of Bennett? The Lloyds' policy No. 1925 was written with recognition of the existence of a primary insurer with coverage to $25,000.00, or greater, and was planned to cover the "excess" above such "insurances." The references in the Lloyds' policy are to any typical primary insurance situation, and the dollar amount contemplated is set out. The St. Paul policy, as mentioned, had an express excess insurance clause for non-owned cars. Thus both the Lloyds and St. Paul policies contain wording placing them after the primary coverage. No reference is made in them to the existence of other such particular coverage. Each had contracted with their own named insureds and without express reference to each other on the point in issue, but each purported to provide some coverage. Thus each company obligated itself to cover Bennett's loss to some degree, and each coverage was to be reduced by the existence of other coverage such as provided by Liberty Mutual. Each negotiated with, and contracted with, a different named insured probably without knowledge of the acts of the other. Each used its own policy forms with its named insured to accomplish the negotiated purposes, each is bound by its policy. Their liability cannot be extended beyond their undertakings; however, the difficulty arises when an attempt is made to compare the two

policies with different named insureds to determine the relationship of the two insurance companies to each other. The contracts do contain language contemplating, in the abstract, the existence of other insurance. Each company attempted to accomplish essentially the same thing in such an eventuality, although different wording was used. Each sought to place itself in line after primary insurance had been exhausted, and so to protect the insured should such an eventuality come about. This is sufficient. It demonstrates that each had a sufficiently similar obligation to the insured that both should discharge it. This general purpose is disclosed by the policies, and is within the general intention of the parties. A further minute analysis of the particular words chosen by the different parties to express the intention does not assist greatly. The choices are infinite, and being those chosen in unrelated situations do not serve to closely define the relationship of two insurance carriers to each other. There have been many cases where an excellent detailed analysis has been made of the content of "other insurance" clauses. Continental Casualty Co. v. Weekes, 74 So.2d 367, 46 A.L.R.2d 1159 (Fla.); McFarland v. Chicago Express, 200 F.2d 5 (7th Cir.), and others cited in 76 A.L.R.2d 502. See also 5 Stan.L. Rev. 147; 38 Minn.L.Rev. 838. This minute comparison of excess type clauses to void type clauses to pro rata clauses to ultimate loss clauses in really unrelated contracts does distinguish between the forms of policies and the techniques used, but does not really provide an answer to the problem and instead can lead to reliance on distinctions without real differences.

St. Paul by its "other insurance" clause did not place itself after Lloyds as it urges, nor did Lloyds make St. Paul primary insurance by the wording it used. Both companies undertook to provide excess coverage, and both were on an equal basis once the primary coverage was exhausted. There is no reason to distinguish between them.

■ Reference is made in the Lloyds' policy to the possibility of *several* primary insurance coverages, and its undertaking to cover the excess above them all. This is relied upon strongly by appellee, but it does not serve to alter the position of St. Paul as excess insurance for its insured. Nor does it thereby change the position of Lloyds relative to St. Paul to put it in a "more excess" position. 69 A.L.R.2d 1122.

■ The Lloyds' policy is not one of indemnity only, as urged by appellee, but is one of liability insurance. The term "indemnity" is used at the outset of the policy, but the language then proceeds much as any insurance contract in reference to the payment of judgments. The policy, again in the "ultimate net loss" provision, says it means sums actually paid in cash by the "assured," but this is not consistent with the insuring provisions nor with the overall policy. See the quotations set out above. This conclusion is consistent with Curtis & Gartside Co. v. Aetna Life Ins. Co., 58 Okl. 470, 160 P. 465. When an ambiguity or uncertainty exists on this question, the policy will ordinarily be considered to be one of insurance. 7 Appleman, Insurance Law and Practice, § 4261.

We hold that neither policy is "excess" to the other, and they are thus on equal footing. The excess loss must therefore be prorated between them. Gilkey v. Andrew Weir Ins. Co., 291 F.2d 132 (9th Cir.); Employers Liab. Assur. Corp., etc. v. Pacific Empire Ins. Co., 102 Cal. App.2d 188, 227 P.2d 53; Maryland Casualty Co. v. Hunter, 341 Mass. 238, 168 N.E.2d 271. The costs and expenses of defense must likewise be prorated. General Acc. Fire & Life Assur. Corp. v. Continental Casualty Co., 287 F.2d 464 (9th Cir.); Fuel Economy Eng'r Co. v. National Life Ins. Co. of Hartford, 218 F.Supp. 226 (D.C.Minn.).

■■ Proration under such circumstances is ordinarily done on the basis of the respective amounts of coverage. 69 A.L.R.2d 1122; Maryland Casualty Co. v. Continental Casualty Co., 189 F.Supp. 764 (D.C.W.Va.); Continental Casualty Co. v. Hartford Acc. & Indem. Co., 213 Cal.App.2d 78, 28 Cal.Rptr. 606. The coverage for proration is that provided by the St. Paul policy, referred to above, and both Lloyds' policies. The Lloyds' policy covering the excess from $25,-000.00 to $125,000.00 is No. 1925 in the record, and the one covering the $125,-000.00 to $500,000.00 excess is No. 1926. There is no reason why the second Lloyds' policy should not be included in the computation although it actually was not utilized by the insured. It was nevertheless coverage for the same risk and was part of a continuous coverage from $25,000.00 to $525,000.00. The fact that it was divided into two policies is not significant on this problem. The authorities appear to make no such distinction as proration, where made, is on the basis of the amount of coverage for the particular risk.

Reversed and remanded for further proceedings in accordance herewith.