**RUAN TRANSPORT CORPORATION, a foreign corporation, doing business in the State of Colorado, Plaintiff,**

v.

**TRUCK RENTALS, INC., Truck Insurance Exchange and Carriers Insurance Company, Defendants.**

**Civ. A. No. 66-C-558.**

United States District Court
D. Colorado.

Jan. 25, 1968.

Richard A. Anderson, Denver, Colo., for plaintiff.

Wormwood, Wolvington, Renner & Dosh, Kenneth M. Wormwood, Denver, Colo., for defendant Carriers Ins. Co.

Blunk & Johnson, George E. Johnson, Denver, Colo., for defendants Truck Rentals, Inc. and Truck Insurance Exchange.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

Jurisdiction exists on the basis of diversity of citizenship of the parties, 28 U.S.C. § 1332. The factual background out of which this litigation arises concerns a truck-train collision in Adams County, Colorado, on about November 20, 1965. The tractor-trailer vehicle involved in the accident was operated by an employee of Ruan Transportation Corporation, an Iowa corporation, the plaintiff herein. The trailer section was owned by plaintiff Ruan, while the tractor vehicle was leased by Ruan from defendant Truck Rentals, Inc., a Colorado corporation.

Plaintiff Ruan carried a general policy of liability insurance on its activities covering loss up to $5,000,000.00 (personal liability and property damage), the insurer being defendant Carriers Insurance Company, an Iowa corporation. Defendant Truck Rentals, Inc., carried a blanket policy on the vehicles which it leased out affording maximum coverage of $100,000.00 [1] (personal liability and property damage) its insurer being defendant Truck Insurance Exchange, a California organization.

Plaintiff Ruan seeks a determination by this Court under the Declaratory Judgment Act, 28 U.S.C. § 2201, of the respective liabilities of these defendants for damages stemming from the November 20, 1965 truck-train collision.

Trial has been had and there has been a factual determination that both the liability insurance on the activities of Ruan Transportation Corporation (provided by defendant Carriers Insurance Company) and the blanket insurance on the leased vehicles of Truck Rentals, Inc. (provided by defendant Truck Insurance Exchange) afford coverage. (Judgment filed December 8, 1967.) Both policies, however, contain "other insurance" clauses, and therefore two questions remain to be decided:

1. Does one of the policies in question provide primary coverage, and the other only excess coverage; or do both policies provide some part of the primary coverage?

---

1. Though the T.I.E. policy provides maximum coverage of only $100,000.00, the parties have stipulated that in computing any apportionment of liability between the companies, the limit of T.I.E. should be deemed to include coverage afforded by another insurer not a party to this action, and that T.I.E. would for this purpose be construed to afford maximum coverage of $1,000,000.00.

It has also been pointed out to the Court that Carriers' policy has a $1,000.00 deductible provision as to property damage liability and cargo liability.

2. If both policies afford primary coverage, on what basis is the prorata share of each to be determined?

### I. *The Relative Liabilities of the Insurers*

The "other insurance" clauses of the two policies read as follows:

Carriers Insurance Company (insurer of Ruan Transportation Corporation):

"(11) OTHER INSURANCE. If there is other insurance against an occurrence covered by this policy, the insurance afforded by this policy shall be deemed excess insurance over and above the applicable limits of all such other insurance."

Truck Insurance Exchange (insurer of Truck Rentals, Inc.):

"(14) Other Insurance—Coverages A & B. The insurance afforded by this policy shall not apply to any loss covered by any other insurance but shall be excess insurance over such other insurance."

We note at the outset that we are concerned here with two clauses of the "excess insurance" type.[2] Neither of these clauses represent what are commonly known as "prorata" clauses [3] or "escape" clauses.[4] Thus the cases cited by the parties which deal with the resolution of conflicts between excess clauses and prorata clauses, or between excess clauses and escape clauses, are not controlling here, though their reasoning may be of some aid in the disposition of this case.

■ We are obliged to look first to Colorado law to determine the applicable rule in this case; however, our search of the authorities discloses no Colorado cases dealing with a conflict between two similar "excess insurance" clauses. Nor do the Colorado cases give any clear indication of the approach which the Colorado courts would take on this issue.

The great weight of authority in other jurisdictions establishes that where two applicable insurance policies contain "excess insurance" provisions, neither policy is entitled to a more literal application at the expense of the other. The two "excess insurance" clauses are held to be mutually repugnant and of no effect, and both policies are regarded as affording primary coverage. Total liability should therefore be prorated between the two insurers in some fashion. See cases cited in Annotation, secs. (a) and (b), 69 A.L.R.2d 1122.

In St. Paul Mercury Insurance Company v. Underwriters at Lloyds of London, 365 F.2d 659 (10th Cir. 1966) it was held as a matter of general insurance law that where one policy of admittedly primary insurance did not fully cover less in an occurrence, and two other policies with "excess insurance" clauses both applied to the occurrence, neither excess policy could be regarded as "more excess" than the other. The two excess policies were thus considered to be on an equal footing and were required to contribute on a prorata basis to the liability which was not covered by the applicable primary insurance.

In the case at bar, there is no additional policy of unquestioned primary coverage as there was in *St. Paul Mercury*, supra. This, however, does not weaken the proposition that the two excess pol-

---

2. An "excess" clause generally provides that if other valid and collectible insurance covers the occurrence in question, the "excess" policy will provide coverage only for liability above the maximum coverage of the other primary policy.

3. A "prorata" clause generally provides that if other valid and collectible insurance covers the occurrence in question, the "prorata" policy will only cover some prorata share of the total liability. Unlike the "excess" clause, the prorata policy does not require that the maximum limits of the other policy be reached before the prorata policy comes into play.

4. An "escape" clause generally provides that if other valid and collectible insurance covers the occurrence in question, there will be no coverage provided by the "escape" policy. Unlike the "excess" policy, any policy with an escape clause would afford no coverage even if the maximum limits of the primary policy were exhausted.

icies should be regarded as standing on an equal footing vis-a-vis each other.[5]

The issue here in dispute hinges on whether any basis exists for giving effect to one of the clauses in question while ignoring the other. Neither the language of the clauses, public policy,[6] nor the intent of the insurers provides any such ground. Both excess clauses by their language specifically provide that the coverage they afford will come into play only after any other primary insurance covering the loss has been exhausted. Thus the clear intent of both policies is the same: the insured under each policy will in any event be covered by some policy against any loss which might occur; but each policy of insurance, primary if necessary, will serve only as excess coverage if there is any other valid and collectible primary insurance.

The only proper result in this case is that both policies are to be regarded as affording primary coverage, since in the absence of either of the policies, the other would clearly have provided such primary coverage. Accordingly, the loss must be prorated between the two policies in some fashion.

## II. *The Basis of Proration*

Colorado law gives no indication of a preferable formula for prorating where total liability is to be prorated between two insurers. Other jurisdictions follow three different approaches to prorating liability.

The majority approach is to prorate the total loss on the basis of the maximum coverage limits of each policy. *St. Paul Mercury*, supra (10th Cir. 1966), and cases cited in Annotation, sec. (b), 69 A.L.R.2d 1122. This approach is asserted to have merit because of its simplicity, and also because it affixes the responsibility of the insurer in proportion to the total coverage which that insurer has undertaken to provide.

This majority method of prorating has been criticized in some jurisdictions, it being argued that the principal expense in purchasing insurance is the cost of minimum coverage, additional amounts of coverage being relatively cheap in comparison. Thus if prorating is to be on the basis of the relative obligation which insurers have undertaken, it should be based on the amount of premium payments received by each insurer, rather than on maximum policy limits. Insurance Company of Texas v. Employers Liability Assurance Corp., 163 F. Supp. 143 (D.C.S.D.Calif.1958). Nevertheless, this premium-based approach has not received wide acceptance since unless the insurance policies involved are identical as to the type of coverage provided, many variables other than the maximum amount of coverage would affect the premium charges.

---

5. In Employers Mutual Casualty Co. v. MFA Mutual Insurance Co., 384 F.2d 111 (10th Cir., Oct. 12, 1967), the Tenth Circuit affirmed as a matter of general insurance law the trial court's decision that there was no reason for distinguishing between the standing of two applicable policies, one containing an "excess" clause and the other containing an "escape" clause. The Circuit Court ordered some form of prorating the loss between the two policies. It thus seems clear that the 10th Circuit would also require prorating the loss between two similar "excess" clauses even where there is no antecedent primary policy as there was in *St. Paul Mercury*, supra, since there was no such primary coverage in the *Employers Mutual* case.

6. Defendant Carriers Insurance Company asserts that a number of cases support the proposition that insurance covering a vehicle involved in an accident supplies primary coverage (rather than insurance covering a driver). This contention is without merit. The cases cited turn rather on the fact that the two policies in question do not both include similar "excess" clauses standing on equal footing. Instead, they generally involve conflicting "excess" and "escape" clauses, or "excess" and "prorata" clauses.

Nor is it significant that one of the policies here involved applies only to motor vehicles, while the other is a general liability policy on a number of activities of the insured. Industrial Indemnity Company v. Continental Casualty Company, 375 F.2d 183 (10th Cir. 1967).

Some courts have rejected the majority method of prorating in favor of prorating based upon the maximum loss which each insurer standing alone would incur in the particular incident. (i. e. absent the other insurer. Thus in a case where the total liability incurred would not exceed the maximum limits of either policy, each insurer would be responsible for one-half of the actual loss. The basis of this division is that if either insurer had been the sole primary insurer it would have been liable for the total loss. Therefore, neither should have to pay more than the other because they both happen to be liable as insurers.)

Several points argue in favor of this minority method of prorating. The majority method of prorating proceeds primarily upon the premise that because the higher policy limit insurer receives more premium payments, he should pay a greater part of any loss incurred. If one accepts the contention of many courts that premium charges do not increase proportionally with the amount of coverage, much of the appeal of the majority method of prorating disappears. The principal arguments in favor of the majority method are then reduced to (1) there is some, though not a proportional, increase in premiums accompanying an increase in policy coverage; and (2) the majority method is usually a simple way of arriving at a prorating formula. Thus the majority method is based on a partial fiction (proportionality between premium charges and maximum policy limits). There is, of course, some increase in premium charges with increased policy limits. This is so particularly when the loss in an occurrence is less than the maximum coverage of either policy. There is not, however, proportionate increase.

The majority method of prorating operates inequitably in its differentiating treatment of the high-loss and low-loss insurer. In return for a greater premium the insurer providing higher coverage has undertaken to protect the insured against accidents involving high losses. Yet because of this undertaking to protect against high loss the larger insurer is in an unfavorable position vis-a-vis the other insurer even in cases of low loss, since under the majority method of prorating the insurer affording the greater maximum coverage pays the greater segment of any loss incurred, regardless of the amount of the loss. This seems inequitable since both insurers have equally undertaken to insure against the low-loss accident.

Apparently the cases are coming to recognize that the minority approach is more equitable and reasonable.

The New Jersey Supreme Court, for example, adopted the minority position in 1959 on the basis of "equitable considerations." Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co., 28 N.J. 554, 147 A.2d 529, 69 A.L.R.2d 1115 (1959). (Each insurer required to pay 50% of the loss as the total loss did not exceed either policy limit.)

The annotation at 69 A.L.R.2d 1122 mentions a few other jurisdictions which follow the minority method. The Illinois Appellate Court, which had formerly endorsed the majority method of prorating, Continental Casualty Co. v. New Amsterdam Casualty Co., 28 Ill.App.2d 489, 171 N.E.2d 406 (1960),[7] recently rejected this approach on equitable grounds and chose to follow the minority method. Continental Casualty Co. v. Travelers Insurance Co., 84 Ill.App.2d 200, 228 N.E.2d 141 (May 26, 1967) (two insurers required to contribute on a 50-50 basis, the total loss not exceeding the limits of either policy).

7. Holding that the trial court had erred in not regarding two policies having "excess" clauses as standing on equal footing, the Appellate Court in holding that Illinois would require prorating stated: "each company is liable for a pro rata share of the judgment or settlement, usually for that per cent of the liab'lity which its policy limits bear to the total limits available to the insured.' 171 N.E.2d at 411.

In *St. Paul Mercury,* supra, (10th Cir. 1966), the court held that two excess insurers were on equal footing and that the loss must be prorated between them. (There was also a primary insurer involved which paid to the limits of its policy; the case dealt with the appropriate treatment of the two excess insurers.) Basing its decision on "pertinent general rules of insurance law" (there apparently being no applicable decision under Oklahoma law) the court stated with respect to the method of prorating:

> "Proration under such circumstances is ordinarily done on the basis of the respective amounts of coverage." 365 F.2d at 663.

However, in the court's recent decision in Employers Mutual v. MFA Mutual, supra, note 5 (10th Cir. 1967), after holding that a policy with an "excess" clause and a policy with an "escape" clause stood on equal footing and thus the insurers must prorate the loss, the court remanded the case to the District Court to decide whether Kansas " * * * would adopt the somewhat prevalent view that the loss should thus be prorated according to policy limits * * *." 384 F.2d at 115. The Circuit Court further stated:

> " * * * should the trial court anticipate that Kansas would not so decide in broad principle, judgment should be entered prorating the loss according to the maximum loss that each company could have sustained in the particular case absent the other's coverage." 384 F.2d at 115.

Employers Mutual v. MFA Mutual, supra, may be read as favoring the minority method of prorating to the majority method. The District Court (District of Kansas) had refused to prorate on the basis of policy limits, emphasizing the point that premium charges do not increase proportionally with maximum policy limits. The Circuit Court reversed the case because the District Court had erred in determining the maximum limit of one of the policies. But the Circuit Court stated with respect to the District Court's refusal to prorate on the basis of policy limits:

> " * * * the trial court's reasoning in this regard pierces to some degree the generally accepted artifice of the many authorities holding that where two or more 'other insurance' provisions are held to be mutually exclusive or repugnant or where there are otherwise two or more insurance policies covering the same risk, the loss must be apportioned on the basis of the respective amounts of primary coverage. See generally Annotations, 69 A.L.R.2d 1122; 76 A.L.R.2d 502; St. Paul Mercury Insurance Co. v. Underwriters at Lloyds of London, 10 Cir., 365 F.2d 659." 384 F.2d at 115.

The Circuit Court thus seems to be disapproving of its own endorsement of the majority method of prorating in *St. Paul Mercury,* supra.

In the light of this expression and also because the reasoning of the minority position has more appeal, we are of the opinion that it should be adopted in this case.

There is no binding Colorado decision; however, there is every reason to predict that the Colorado Supreme Court will follow the better reasoned minority rule.

There is a practical problem here and that is that the minority method does not lend itself to a simple fractional prorating formula as would the majority method. We are not clearly informed of the total loss in this case. One insurer claims the definite amount cannot yet be determined, while the other insurer affixes the loss at approximately $70,000.00 (this figure excludes possible claims by passengers on the train, and since the three-year tort statute has not yet run on the accident, the amount of total loss would seem uncertain at this point). If the loss were less than $1,000,000.00 [8] the insurers would each be

---

**8.** The coverage which the T.I.E. policy provides for the purpose of prorating, by stipulation of the parties. See footnote 1, infra.

responsible for one-half of the loss utilizing the minority method. If the loss exceeded $1,000,000.00 this proportion would change, since one insurer standing alone (Carriers Insurance) would have incurred a greater loss than the other.

It is requested that counsel prepare an appropriate judgment in line with the views expressed herein.