**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

AMERICAN CASUALTY COMPANY
OF READING PENNSYLVANIA, a
Pennsylvania insurance corporation,

        Plaintiff - Appellee,

        v.

HEALTH CARE INDEMNITY, INC.,
a Colorado insurance corporation,

        Defendant - Appellant.

No. 06-6277

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CIV-05-356-L)**

---

David A. Russell (Leslie C. Weeks with him on the brief), of Rodolf & Todd, Tulsa, Oklahoma, for Defendant - Appellant

James Robert Hall of Meckler, Bulger & Tilson LLP, Chicago, Illinois, (Michael M. Marick of Meckler, Bulger & Tilson LLP, Peter L. Wheeler and Larry G. Cassil, Jr. of Pierce, Couch, Hendrickson, Baysinger & Green, L.L.P., Oklahoma City, Oklahoma, with him on the brief) for Plaintiff - Appellee.

---

Before **HARTZ** and **GORSUCH**, Circuit Judges, and **BRIMMER**,[*] District Judge.

---

[*]Honorable Clarence A. Brimmer, United States District Judge, District of Wyoming, sitting by designation.

**HARTZ**, Circuit Judge.

Mary Pat Rooks, a registered nurse, purchased professional liability insurance from American Casualty Co. of Reading, Pennsylvania (ACC) with a policy limit of $1 million per occurrence. She also qualified as an insured under a policy issued by Health Care Indemnity, Inc. (HCI) to her employer with a limit of $10 million per occurrence. In May 2004 she was named as a defendant in a wrongful-death action filed in Oklahoma state court, and she sought coverage under both policies. This litigation concerns the apportionment of liability between the two insurers.

That apportionment depends on the nature of the two policies. The pertinent definitions were provided by the Oklahoma Supreme Court in *Equity Mutual Insurance Co. v. Spring Valley Wholesale Nursery*, 747 P.2d 947, 954 (Okla. 1987):

> *Primary coverage* is provided when, under the terms of the policy, the insurer is liable without regard to any other insurance coverage available. *Excess coverage* or *secondary coverage* is provided when, under the terms of the policy, the insurer is liable for a loss only after any primary coverage—*other insurance*—has been exhausted. . . . An *escape clause*, also known as a *no liability clause*, disclaims any and all liability if other insurance is available.

(footnotes omitted). The district court held that both policies provided excess coverage to Ms. Rooks for professional liability, and that the ACC policy did not have an escape clause. Applying the doctrine of equitable contribution, the court

ruled that each insurer should pay its pro-rata share of both the underlying loss and the defense costs.  We affirm, agreeing with the court's characterization of the policies and the application of equitable contribution.

The ACC policy's "Coverage Agreement" is what would be expected for primary coverage.  It states:

> We will pay all amounts up to the limit of liability which **you** become legally obligated to pay as a result of **injury** or **damage**.  In addition to the limit of liability, we will also pay **claim expenses**. The **injury** or **damage** must be caused by a **medical incident** arising out of the supplying of, or failure to supply, **professional services** by **you**, or by anyone for whose professional acts or omissions **you** are legally responsible.

R. Vol. 1 at 32.  The relevant "Limit of Liability" provision also reads as it would in a primary policy:

> Each Claim
>
> The limit of liability stated on the **certificate of insurance** for each **claim** is the limit of our liability for all **injury** or **damage** arising out of, or in connection with, the same or related **medical incident**.

*Id.* at 37.  So does the "Defense and Settlement" clause:

> We have the right and will defend any **claim**.  We will:
>
> A.    do this even if any of the charges of the **claim** are groundless, false or fraudulent; and
>
> B.    investigate and settle any **claim**, as we feel appropriate.
>
> Our payment of the limit of liability ends our duty to defend or settle.  We have no duty to defend any **claims** not covered by this policy.

*Id.* at 34.  The "Other Insurance" clause, however, which precedes the above

policy provisions, limits coverage when other insurance applies:

> Any loss resulting from any **claim** insured under any other insurance
> policy or risk transfer instrument, including but not limited to, self-
> insured retentions, deductibles, or other alternative arrangements,
> which applies to this loss, shall be paid first by those instruments,
> policies or other arrangements.  This insurance will not serve as
> primary insurance where there is other applicable insurance.  It is the
> intent of this policy to apply only to loss which is more than the total
> limit of all deductibles, limits of liability, self-insured amounts or
> other valid and collectible insurance or risk transfer arrangements,
> whether primary, contributory, excess, contingent, or otherwise.
> This insurance will not contribute with any other applicable
> insurance.  In no event will we pay more than our limit of liability.
>
> These provisions do not apply to other insurance policies or risk
> transfer arrangements written as specific excess insurance over the
> limits of liability of this policy.

*Id*. at 27.

The HCI policy's "Insuring Agreements," like ACC's "Coverage

Agreement," suggests primary coverage:

> [HCI] will pay on behalf of the **insured** all sums which the **insured**
> shall become legally obligated to pay as **damages** because of . . .
> Injury . . . to which the Policy applies, caused by an **occurrence** [that
> is, an act or omission arising out of the provision of health care
> services] during the policy period.

R. Vol. 2 at 242; *see id.* at 252–53 (defining *occurrence*).  The provision also

states that HCI "shall have the right and duty to defend any suit against the

**insured** seeking such **damages** even if any of the allegations of the suit are

groundless, false, or fraudulent."  *Id.* at 242.  Unlike ACC's limit-of-liability

provision, however, the HCI "Limits of Liability" section includes language limiting coverage when there is other insurance:

> [I]n any state or country where there exists a state fund or where other primary insurance has been purchased for purpose of providing compensation for **patient** injury and for which application has been made and for which coverage is included in this policy, the limits of liability shall apply excess over any other valid and collectible insurance.

*Id.* at 248. The policy's "Other Insurance" clause repeats the point:

> If other insurance not afforded by the Company is available to any **insured** covering an **occurrence** also covered hereunder, the insurance afforded hereunder shall be excess of and not contribute with such other insurance. Amounts collectible under a self-insured trust plan or any other self-insured program are other insurance for the purposes of this policy. This Article VI, Paragraph 7, does not apply to excess insurance written specifically to be in excess of this policy. Nothing contained herein shall be construed to make this policy subject to terms, conditions, and limitations of any other insurance.

*Id.* at 255.

ACC and HCI disagreed about their respective obligations under their policies. ACC filed a declaratory-judgment action in the United States District Court for the Western District of Oklahoma, claiming that the loss and expenses should be split between ACC and HCI on a pro-rata basis. HCI responded (1) that it provided excess coverage only; (2) that the ACC policy, whose other-insurance clause was an "escape" clause rather than an excess-insurance clause, provided primary coverage; and (3) that therefore ACC was not entitled to a pro-rata contribution from HCI.

-5-

On cross-motions for summary judgment, the district court concluded that both policies provided excess coverage, that the other-insurance clauses in the policies were irreconcilable, and that the indemnity payments and defense costs must therefore "'be shared on a pro rata basis according to the ratio each respective policy limit bears to the cumulative limit of all concurrent policies'"—that is, HCI is liable for 10/11 of defense costs and indemnity payments and ACC is liable for the remaining 1/11. *Id.* at 309–310 (quoting *Equity Mutual*, 747 P.2d at 954). HCI appeals.

## I. DISCUSSION

We review de novo the district court's grant of summary judgment, applying the same legal standard that the district court was required to use. *See Carpenter v. Boeing Co.*, 456 F.3d 1183, 1192 (10th Cir. 2006). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties agree that their dispute is governed by the substantive law of Oklahoma. *See Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007).

### A. Proration of Liability

If two policies cover the same risk for the same insured, but neither provides primary coverage, "an excess clause controls over . . . an escape clause .

. . and . . . conflicting 'other insurance' clauses cancel each other," *Equity Mutual*, 747 P.2d at 950, with the "loss shared by the insurers on a pro rata basis," *id*. at 954.

The district court interpreted both the HCI and ACC policies as providing only excess coverage. There is no dispute on appeal that this is a proper description of the HCI policy. But HCI challenges that description of the ACC policy. It contends that ACC's policy was a primary policy. It argues that unlike its policy, the only language in ACC's policy that limits coverage when another policy applies is language "buried" in its other-insurance clause. Aplt. Br. at 11. Alternatively, it argues that the limiting language in the ACC policy is an escape clause. Following Oklahoma law regarding construction of insurance policies, we disagree.

"An insurance policy is to be treated as a contract and will be enforced according to its terms." *Equity Mutual*, 747 P.2d at 953. Under Oklahoma law, "'[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others.'" *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 377 n.11 (Okla. 1991) (quoting Okla. Stat. tit. 15 § 157). Accordingly, when determining a policy's scope of coverage, we interpret the policy as a whole. *See id*.

Applying these propositions to the ACC policy, we agree with the district court. The policy's other-insurance clause states that any loss "shall be paid

first" by other policies that apply to the loss, that it "will not serve as primary insurance where there is other applicable insurance," and that it will "apply only to loss which is more than the total limit of" those other policies, R. Vol. 1 at 27. Nothing stated elsewhere in the policy suggests otherwise. A policy need not use the word *excess* to be an excess policy. The definition of *excess coverage* in *Equity Mutual* does not itself use the word *excess*, *see* 747 P.2d at 954; it looks to the substance of the policy language, not whether any particular "magic word" is used. To be sure, the other-insurance clause states that it does "not apply to other insurance policies . . . written as specific excess insurance over the limits of liability of this policy." R. Vol. 1 at 27. But the HCI policy is not so written; it makes no mention of the ACC policy. HCI's limits-of-liability provision states only that "where other primary insurance has been purchased . . . , the limits of liability shall apply excess over any other valid and collectible insurance," R. Vol. 2 at 248; and its other-insurance clause states only that "[i]f other insurance not afforded by [HCI] is available to any **insured** covering an **occurrence** also covered hereunder, the insurance afforded hereunder shall be excess of and not contribute with such other insurance." *Id.* at 255. Although the first quoted language appears in a limits-of-liability provision rather than an other-insurance clause, we fail to see how the position of that language causes the HCI language to prevail over the ACC language. Read as a whole, the two policies are essentially identical with respect to priority of coverage.

-8-

We also are not persuaded by HCI's contention that ACC's other-insurance clause is an escape clause—that is, that it "disclaims any and all liability if other insurance is available." *Equity Mutual*, 747 P.2d at 954; s*ee id.* (if one policy has excess coverage and a second has an escape clause, the first is excess over the second). HCI contends that the clause imposes so many conditions that it is effectively an escape clause. We disagree. The ACC policy does not "disclaim any and all liability," *id.*; nor does it accomplish that result indirectly. Like the HCI policy, it provides coverage once the coverage of other policies has been exhausted. Both policies provide real, not illusory, coverage even when there may be other coverage. Neither policy has language comparable to what we construed as creating escape clauses in *State Farm Mutual Automobile Insurance Co. v. Mid-Continent Casualty Co.*, 518 F.2d 292, 297 (10th Cir. 1979) (insurance "'shall not apply to any liability or loss against which the insured . . . has other collectible insurance applicable thereto, in whole or in part'"; "'insurance shall not apply to the rentee if other valid and collectible automobile liability insurance, either primary or excess, is available.'").

In sum, both policies provide excess coverage. Accordingly, the other-insurance clauses must be "disregarded, with the loss shared by the insurers on a pro rata basis." *Equity Mutual*, 747 P.2d at 954. Under Oklahoma law the apportionment is determined "according to the ratio each respective policy limit

bears to the cumulative limit of all concurrent policies." *Id.* HCI does not dispute that it must pay 10/11 of the loss if both policies provide excess coverage.

## B.     Proration of Defense Costs

The district court found that both ACC and HCI had contributed to Ms. Rooks's defense costs and attorney fees—ACC had spent $134,578.43 and HCI $353,001.71. Recognizing that ACC had paid more than 3/11 of the total, the court entered a judgment for ACC in the amount of $90,252.96, so that the net payments by the parties would be in the same ratio as their liability limits.

HCI asserts that the district court erred in awarding the $90,252.96 judgment. It contends that each insurer must bear its own defense costs and attorney fees because the doctrine of equitable contribution does not apply to defense costs. "According to Oklahoma law," it argues, "one insurance company cannot require another to pay defense costs and fees unless there is a specific contractual right as between the two insurance companies." Aplt. Br. at 34.

Controlling precedent of this court, however, compels us to disagree. In *St. Paul Mercury Insurance Co. v. Underwriters at Lloyds of London, England*, 365 F.2d 659, 662 (10th Cir. 1966), a diversity-case appeal from the Western District of Oklahoma, we applied the doctrine of equitable contribution to apportion defense costs and attorney fees when, as here, two policies insured the same person for the same risk at the same level of coverage. John Bennett had been involved in an accident while driving a vehicle owned by his employer. Liberty

-10-

Mutual Insurance Company issued a policy to the employer that provided primary coverage to both the employer and Bennett. The two parties on appeal provided excess coverage: The St. Paul policy was issued to Bennett, but provided only excess if he was driving a nonowned car and other insurance covered the loss; the Lloyds policy (issued to the employer) covered the employer and Bennett, but only for loss above the primary-insurance coverage. As the primary insurer, Liberty Mutual defended the initial lawsuit and paid its policy limit in partial satisfaction of a judgment against Bennett. St. Paul contributed to the judgment and spent more than $20,000 defending later lawsuits against Bennett and settling those claims. When Lloyds refused to pay anything, St. Paul sued for contribution. We examined the policies and concluded: "Both [St. Paul and Lloyds] undertook to provide excess coverage, and both were on an equal basis once the primary coverage was exhausted. There is no reason to distinguish between them." *Id.* at 662. Accordingly, we prorated the excess loss between the two insurers. *Id.* at 663. "The costs and expenses of defense," we added, "must likewise be prorated." *Id.*; *see also* 14 Steven Plitt, et al., Couch on Insurance § 200:35 (3d ed. 2007) ("where two or more primary insurers' policies contain 'other insurance' clauses purporting to make respective policy excess to the other, the conflicting clauses will be ignored and the [defense costs] prorated among the insurers on the ground the insured would otherwise be deprived of protection.").

HCI relies on two Tenth Circuit cases for the proposition that defense costs cannot be apportioned. But in neither case did the two insurance policies cover the same insured at the same level for the same risk. In *United States Fidelity & Guaranty Co. v. Tri-State Insurance Co.*, 285 F.2d 579, 582 (10th Cir. 1960), we considered the respective defense obligations of two insurers that provided the same insured *different* levels of coverage for the same risk and held that neither was "entitled to divide the duty [to defend] nor require contribution from another absent a specific contractual right." The dispute arose out of an automobile accident involving a truck owned by one Barsh and used by Kerr Glass Company to make shipments. Tri-State Insurance Company provided primary coverage to Barsh and "any person or organization legally responsible for the use (of the truck), provided the actual use . . . is by the named insured or with his permission . . . ." *Id.* at 580 (internal quotation marks omitted). It was not disputed that Kerr was an additional insured under the policy. United States Fidelity and Guaranty (USF&G), on the other hand, insured Kerr, but provided only excess coverage "with respect to loss arising out of the use of any non-owned automobile . . . ." *Id.* at 581. Unlike the insurers in *St. Paul*, USF&G and Tri-State were not on equal footing; one provided primary coverage and the other was an excess insurer.

Likewise, in *West American Insurance Co. v. Allstate Insurance Co.*, 295 F.2d 513 (10th Cir. 1961), the two insurers provided the same insured different coverage for the same risk. John Fender wrecked a vehicle borrowed from

-12-

Lawrence Blevins. West American issued Blevins a policy providing primary coverage for him and "any other person using such automobile, provided the actual use . . . is with the permission of the named insured." *Id.* at 513–14 (internal quotation marks omitted). Allstate, in contrast, provided excess coverage. It protected Fender's family, except that "[w]ith respect to the use of a . . . non-owned automobile Allstate limited its liability to excess insurance over any other collectible insurance." *Id.* at 514 (internal quotation marks omitted).

HCI also relies on authority from Oklahoma state courts. We are, of course, bound by declarations of state law in decisions of the state's highest court. *See TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1181 (10th Cir. 2007). But we find no such holding contrary to *St. Paul*.

The most recent opinion cited by HCI, *United Services Automobile Ass'n v. State Farm Fire & Casualty Co.*, 110 P.3d 570 (Okla. Civ. App. 2004) (*USAA*), would appear to support its position. The court in that case refused to apportion defense costs between two insurers. Although the opinion acknowledged that the Oklahoma Supreme Court in *United States Fidelity & Guaranty Co. v. Federated Rural Electric Insurance Corp.*, 37 P.3d 828, 832 (Okla. 2001), recognized that the doctrine of equitable contribution generally applies when insurers cover the same insured for the same risk at the same level of coverage, it went on to say:

> However, in that case, the Supreme Court did not make a determination that the doctrine of equitable contribution is the law in Oklahoma. The law in Oklahoma is set forth in *Fidelity & Casualty*

-13-

*Co. of New York v. Ohio Casualty Insurance Company*, [482 P.2d 924 (Okla. 1971)], wherein the Supreme Court held the duty of an insurance company to defend lawsuits against the insured is personal to each insurer, and that insurer is not entitled to divide the duty nor require contribution from another insurer, absent a specific contractual right.

*USAA*, 110 P.3d at 573.

For two reasons we do not follow *USAA*. First, a decision by a state intermediate appellate court is not binding on us with respect to matters of state law, *see Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 622 n.1 (10th Cir. 1995), and a panel of this court cannot overturn one of our precedents on such authority, s*ee Wankier v. Crown Equipment Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) ("when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on . . . subsequent panels of this Court, unless an intervening decision of the *state's highest court* has resolved the issue." (emphasis added)).

Second, with respect to the issue before us, *USAA* is unpersuasive. *Fidelity & Casualty*, 482 P.2d 924, on which *USAA* relied, considered a dispute between insurers who covered different insureds—a contractor and its subcontractor. Thus, it did not produce a holding regarding the propriety of equitable contribution between two insurers who cover the same insured for the same risk at the same level of coverage. And as for *USAA*'s treatment of *Federated Rural*, 37 P.3d 828, we do not think that the Oklahoma Supreme Court's discussion of

-14-

equitable contribution can be dismissed as lightly as the *USAA* opinion did. To be sure, the discussion of equitable contribution was dictum because the holding was that equitable *subrogation* does not apply between a primary and an excess insurer before exhaustion of the primary-policy limits. But if it had been settled law in Oklahoma that the doctrine of equitable *contribution* never applies, the *Federated Rural* discussion of the matter seems peculiar. Nowhere in the opinion does the Oklahoma Supreme Court express any discomfort with, much less criticism of, the doctrine. On the contrary, the opinion appears to endorse the "equitable principle[] underlying [its] . . . public polic[y]." *Id*. at 832. As it describes that policy, "The aim of equitable contribution is to apportion a loss between two or more insurers who cover the same risk so that each pays his fair share of a common obligation, and one co-insurer does not profit at the expense of the others." *Id.* Contrary to the view of the *USAA* opinion, we would read the following as a statement of Oklahoma law:

> Equitable contribution is the right to recover, not from a party primarily liable for the loss, but from a co-obligor or co-insurer who shares common liability with the party seeking contribution. The doctrine applies only when co-insurers have covered the same insured and the same particular risk at the same level of coverage. The right of contribution is not derivative of the rights of the insured, but belongs to each insurer independently to seek reimbursement from a co-insurer those sums which were paid in excess of an insurer's proportionate share of the common obligation.

*Id.* At the least, we do not read the Oklahoma Supreme Court's decision as undermining this court's otherwise controlling precedent in *St. Paul*.

Both ACC and HCI insured Ms. Rooks for the same risk at the same level of coverage.  Accordingly, we conclude that the district court properly applied the doctrine of equitable contribution to apportion defense costs.

## II.    CONCLUSION

We AFFIRM the district court's judgment.