580 P.2d 41 (1978)
GUARANTY NATIONAL INSURANCE COMPANY, a Colorado Corporation, Plaintiff-Appellant,
v.
OHIO CASUALTY INSURANCE COMPANY, an Ohio Corporation, Defendant-Appellee.
No. 76-689.
Colorado Court of Appeals, Division II.
March 30, 1978.
Rehearing Denied April 13, 1978.
Certiorari Granted June 5, 1978.
*42 Watson & Nathan, P. C., J. Andrew Nathan, Denver, for plaintiff-appellant.
DeMoulin, Anderson, Campbell & Laugesen, Richard W. Laugesen, Jr., Denver, for defendant-appellee.
SMITH, Judge.
Plaintiff, Guaranty National Insurance Company, appeals from a declaratory judgment determining that its insurance policy provides primary coverage, while that of defendant, Ohio Casualty Insurance Company, provides only excess coverage. We reverse and remand for entry of a judgment in conformance herewith.
This case arose out of an automobile accident involving a car driven by Olive Jensen and another driven by Christy Brost. Mrs. Jensen was killed in the accident, several people in the Brost car were injured, and there was considerable damage to the two vehicles. At the time of the accident, Mrs. Jensen was driving a car belonging to G & J Specialties, d/b/a Budget Rent-a-Car, from Grand Junction to Denver. She was transporting the car for and on behalf of G & J Specialties. (For the purposes of this case, it is unnecessary to establish whether Mrs. Jensen was an independent contractor or an employee of G & J Specialties it being sufficient to show that she was operating the car as someone other than a "rentee.")
Guaranty National Insurance Company insured the car owned by G & J Specialties and driven by Olive Jensen for both liability and collision expenses. The Ohio Casualty Company policy provided "owner" coverage to Mrs. Jensen for her private automobile, and it also extended "non-owner" coverage to her in certain circumstances when she *43 was driving another's car. At issue here is the question of which insurance policy should be held to cover the liability to Christy Brost and her passengers for their injuries, as well as the liability for the collision damages. This case does not involve a claim for Personal Injury Protection (P.I.P.) benefits for Olive Jensen; therefore, §§ 10-4-706 and 707, C.R.S.1973, are inapplicable.
The plaintiff contends that Ohio Casualty's "non-owner" insurance is "primary" in this case, and that Guaranty National should only be made to pay when the Ohio Casualty policy is exhausted. Plaintiff refers us to a recently overruled insurance regulation, Regulation 74-20, which stated that "non-owner" coverage should be primary in cases such as this. Claiming to have relied on this regulation, which was in effect when its policy was written, Guaranty National argues that a retroactive application of the overruling case, Travelers Indemnity Co. v. Barnes, Colo., 552 P.2d 300 (1976), would be unfair.
The trial court rejected this argument and held that the effect of the Travelers case is to prevent the "non-owner" insurance in this case from being conclusively declared to be the primary policy. Having resolved this key issue, the court turned to a comparison of the policies themselves and held that Guaranty's "owner" coverage had primacy here.
On appeal, Guaranty National presses the same arguments that it did below, namely that: (1) the Travelers case should not be applied retroactively, and (2) if it is applied retroactively, both parties should be equally liable under the insurance policies themselves, since the policies are on an "equal footing."

Retroactivity
We deal first with the question of whether the Travelers opinion concerning Insurance Commission Regulation 74-20 should receive retroactive effect. Regulation 74-20 had interpreted certain sections of the Colorado No-Fault Act, see §§ 10-4-701 et seq., C.R.S.1973, to require that when an accident involves a driver who is neither the owner of the car nor an employee of the owner, and the driver is insured under a policy of his own which complies with the No-Fault Act, the driver's policy would provide not only personal injury (P.I.P.) benefits, "but also liability and all other coverages" contained in the policy  on a primary basis. Under this regulation, the owner's policy provided merely excess coverage. The Colorado Supreme Court, in Travelers, declared that Regulation 74-20 violated the context of § 10-4-706(1)(b) to (e), C.R.S.1973, which it purported to interpret.
Appellant urges us not to apply Travelers, on the grounds that the approach to stare decisis in an overruling decision has changed from "finding what the law always was" to recognizing that a decision, statute, or regulation is an "existing juridical fact" until the day it is overruled; and that, since the appellant has arguably relied on Regulation 74-20, we should, in the interest of fairness, give Travelers prospective effect only.
Crucial to these arguments, however, is the contention that the Travelers opinion left open the question as to the application of that decision. It is well settled that the court which announces a rule may determine whether it shall be given retroactive effect. Taylor v. People, 155 Colo. 15, 392 P.2d 294 (1964); Van Cleave v. Board of County Commissioners, 33 Colo.App. 227, 518 P.2d 1371 (1973). Only in the absence of such directions may a lower court decide for itself the question of prospectivity. See generally Ruark v. People, 158 Colo. 110, 405 P.2d 751 (1965). On examining the Travelers decision, we conclude that the Supreme Court did not leave the question open for lower courts to decide.
It was the position of the court in Travelers that the invalidity of Regulation 74-20 was unmistakable and that the Insurance Commission had exceeded his authority by promulgating it. Travelers, supra. While the use of such strong language historically was often taken to mean that an offending *44 statute or regulation was void ab initio, see generally, 16 C.J.S. Constitutional Law § 101, the recent trend has been to adopt a more moderate stance, such as declaring that a statute or regulation is without effect from the date of decision forward. See, e. g., Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). "Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application," are coming under increasing scrutiny before decisions regarding retroactivity are made. Chicot County, supra; see Van Cleave, supra.
The Travelers decision makes it clear that the court there weighed these variables. The court noted that the insurance regulation did not carry the force of law; found the regulation to be in plain conflict with its mother statute; and noted that the insurance industry itself was given to ignoring the regulation, with the blessings of the commissioner. In light of this, we feel that the efficacy of Regulation 74-20 was clearly dealt withall effects resulting from the existence of the regulation were to halt immediately. [1]See Chicot County, supra.
Because this intention is so manifest, it would be inappropriate for us to deal with Regulation 74-20 on an ad hoc basis and to resurrect it in cases such as this where a party claims to have relied on the regulation. To do so would be to elevate the regulation above the statute which it patently misinterpreted. Cases such as Van Cleave, supra, are inapposite in this respect.
We hold therefore that Regulation 74-20 is of no effect and does not serve to resolve the nature of Ohio Casualty's liability. This case must instead be decided on the merits of the two insurance policies themselves.

The Applicability of the Two Policies
Although the trial court made no specific findings relative to the terms of these policies, we note that where all of the written instruments at issue are properly before us on appeal, their interpretation becomes a matter of law for this court. Sentinel Acceptance Corp. v. Colgate, 162 Colo. 64, 424 P.2d 380 (1967).
Ohio Casualty argues that its policy specifically excludes coverage under circumstances such as those which occurred here. It points first to the policy's definitions regarding coverage for a "non-owned automobile," and states that coverage was not contemplated if the subject car was provided for "regular use" to the named insured, as G & J's cars were ostensibly provided for Mrs. Jensen here. See Hayes v. Fireman's Fund Insurance Co., 170 Colo. 164, 460 P.2d 225 (1969).
According to the stipulated facts, Mrs. Jensen was merely driving the car as "other than a `rentee.' "As the record stands, we can only conclude that the defendant has not met its burden of proving that the "regular use" exclusion applies here. See West v. Credit Life Insurance Co., 30 Colo.App. 455, 494 P.2d 601 (1972); see generally Ferndale Development Co. v. Great American Insurance Co., 34 Colo.App. 258, 527 P.2d 939 (1974).
Defendant also directs our attention to a provision excluding coverage for the named insured while that person is engaged in another's automobile business. However, "automobile business" is defined in the contract as the business of "selling, repairing, servicing, storing or parking automobiles." Whether G & J's business here be characterized as that of "renting" or "transporting" automobiles, it is not identified in the contract as an "automobile business," and the inference which we must draw is that it was not considered to be one. Denver Joint Stock Land Bank v. Markham, 106 Colo. 509, 107 P.2d 313 (1940).
*45 Thus, from our examination of the Ohio Casualty contract, we conclude that Mrs. Jensen's driving of the non-owned vehicle was covered under the terms thereof.

Applicability of the "Excess Clauses"
This brings us to the issues surrounding the "excess insurance" clauses contained in the policies. Each insurance company has attempted to use such a clause to limit its liability for any given occurrence, to that amount which would remain unpaid after all other valid and collectible insurance is exhausted. See Ruan Transport Corp. v. Truck Rentals, Inc., 278 F.Supp. 692 (D.Colo.1968).
Ohio Casualty asserts that it should get the full benefits of its excess clause, on the ground that Guaranty National's excess clause is, on the face of that policy, not applicable. Ohio points to the fact that Guaranty's policy contains two main sections, A-125, which provides owner coverage for G & J Specialties, and A-4396, which provides renter coverage. Following these sections is an addendum entitled "Automobile Rental Endorsement," which contains the excess clause at issue here. In pertinent part, the addendum states that the excess clause applies to "[c]onditions 6 of the policy and condition 5 of coverage part A-4396." Ohio Casualty argues that the only conditions of the Guaranty National policy which are designated by the Arabic numbers, 5 and 6, are contained in the "rental" section, and that the excess clause therefore applies to rental situations only.
But the language in the addendum is not as clear as defendant suggests. The fact that it was written in a dichotomous mannerreferring first to "policy" and second to "part A-4396"combined with the fact that the numbers "6 and 5" are out of sequence, leaves the phrasing ambiguous. Furthermore, replacing condition "6" of the rental section with an excess insurance clause is curious at best, since condition "6" deals with "benefit to bailees." Looking for help in that section of the policy dealing with "owner" coverage, see Smith v. Woodward, 51 Colo. 311, 117 P. 140 (1911), we note that the provisions for "other insurance" there fall under the heading: "VI Additional Conditions." In light of this, it is clear to us that, by the words "conditions 6 of the policy," the plaintiff and G & J Specialties meant to indicate the Roman Numeral "VI," and to apply the excess clause to the "other insurance" portion of the "owner" policy. See Hutchison v. Elder, 140 Colo. 379, 344 P.2d 1090 (1959). We conclude, therefore, that the excess clauses in both policies are applicable here.

Excess Clauses and the "No Fault" Act
Ohio Casualty next claims that, notwithstanding the fact that the two policies by their terms might share an equal footing, public policy behind the "No Fault" legislation demands that Guaranty National's statutorily-required "owner" coverage be deemed the primary policy here. We disagree.
No Colorado court has yet faced this precise issue. Guaranty National argues that the only concern fostered by the "No Fault" legislation is that of insuring the availability of adequate compensation for accident victims, and that holding both insurance companies liable here would do no disservice to that concern, as the victims would be compensated at least to the statutory minimum. See § 10-4-706, C.R.S.1973. Ohio Casualty, on the other hand, argues that the policy behind the act goes one step further than that characterized above, and encompasses an interest in administrative efficiency, by guaranteeing that owner coverage would be absolutenot subject to dilution or avoidance.
Neither the legislative declaration,§10-4-702, C.R.S.1973, nor the rest of the act is committal on the point of primary coverage. The two purposes stated in the declaration are: the avoidance of inadequate compensation for victims and the procurement of insurance by owners. Nothing, however, is stated in or implied by the act to the effect that a particular insurance company's policy shall be primary.
*46 It is our belief that the General Assembly intended, through the "No Fault" Act, to provide a financial net below which it would not let accident victims fall. As long as this concern is satisfied, the act was not intended to be a restriction on the insurance companies' prerogatives in the free marketplace to contract with their insureds for more extensive coverage (in the voluntary non-owner policies) or to design coverage which would be shared with other companies under certain circumstances (as here, with the excess clause on compulsory owner insurance). See Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co., 28 N.J. 554, 147 A.2d 525 (1959); but see Rocky Mountain Fire & Casualty Co. v. Allstate Insurance Co., 107 Ariz. 227, 485 P.2d 552 (1971). We hold therefore that there is no public policy bar to the existence of excess clauses in compulsory owner insurance under the No Fault Act.
Ohio Casualty Company alternatively argues that Guaranty's policy should still be considered primary, because that company undertook to write a commercial risk for G & J Specialties, as opposed to the incidental "non-owner" coverage provided for Mrs. Jensen by Ohio Casualty. We are not swayed by such an argument. It is true that Guaranty undertook to insure a business operation of G & J Specialties and that the risks inherent in that business were undoubtedly much better known to that insurer. By the same token, however, Ohio Casualty was in a better position to have taken into account the personal driving history of Mrs. Jensen. See Federal Insurance Co. v. Prestemon, 278 Minn. 218, 153 N.W.2d 429 (1967) (Otis, J. dissenting). We do not feel that the risks here were unforeseeable by either company when the respective contracts were entered into. See generally, Continental Casualty Co. v. St. Paul Mercury Flyer & Marine Insurance Co., 163 F.Supp. 325 (D.Fla.1958).

Apportioning the Loss
Having determined that the two policies stand on an equal footing, as regards excess coverage, we are faced with the problems of how the loss between the companies should be apportioned. Guaranty National insured G & J Specialties for up to $1,000,000 for losses resulting from all causes, including bodily injury and property damage. Ohio National provided Mrs. Jensen with coverage of up to $25,000 for bodily injury liability, and a like amount for property damage.
A preliminary question concerns the effect of the two "excess" clauses. The modern trend in dealing with conflicting "excess" clauses has been to give validity to neither one at the expense of the other, but rather to declare them both void, as being mutually repugnant. See Ruan Transport, supra; see generally State Farm Mutual Automobile Insurance Co. v. Employers Commercial Union Insurance Co., 35 Colo.App. 406, 535 P.2d 266 (1975). We agree with this method of resolution.
Since both policies are primary, and neither is insulated any longer by the shield of an "excess" clause, the final issue is the basis upon which the coverage should be prorated.
There are two major approaches presently being followed on the prorating issue. The firstseemingly the majority approachprorates the losses on the basis of the maximum coverage provided in each policy. In the instant case, for example, this approach would require Guaranty to pay $20 for every $1 paid by Ohio National. This method of prorating ostensibly takes into account both the coverage which each insurer has volunteered to provide and the relative premiums paid by the insureds. However, the drawback of this approach is that it is based "on a partial fiction (proportionality between premium charges and maximum policy limits)," Ruan Transport, supra. This results in an unfairness to the larger insurer. That is just because one company has insured a party against high loss accidents, it should not therefore pay more in a case involving a low loss accident than another company which insured against just such an accident.
*47 To meet this inequity a minority approach has developed which is beginning to displace the "maximum coverage" formula. See Ruan Transport, supra; Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co., 28 N.J. 554, 147 A.2d 525 (1959); annot., 69 A.L.R.2d 1115 (1959). Under the new approach, both companies are made to share equally in the loss until the lesser policy is exhausted.
On this issue, again, there is no Colorado precedent. We acknowledge the recent Colorado Supreme Court decision, Dairyland Insurance Co. v. Drum, Colo., 568 P.2d 459 (1977), which apportioned liability on the basis of a ratio of the policy limits as called for in the prorating clauses of the contracts themselves. The circumstances of that case, however, made it unnecessary to address the issue which we must face today. "We need not decide . . .," said the Dairyland majority, "which rule applies in Colorado, since both insurance policies provide for apportionment under the majority approach." Under the circumstances of the instant case, neither policy provided for apportionmentboth insurance companies having opted, instead, for the use of excess clauses to deal with "other" insurance.
We also acknowledge a recent decision of this court, which falls generally into the "minority approach" camp. See State Farm Mutual Automobile Insurance Co. v. Employers Commercial Union Insurance Co., 35 Colo.App. 406, 535 P.2d 266 (1975). There, the court held that where both policies were individually sufficient to cover the entire loss, each should cover half. As with the Dairyland case, the resolution in State Farm does not fit the circumstances before us, andas with Dairyland the court in State Farm expressly refrained from adopting one of the two approaches.
After weighing the two approaches to the apportionment problem, we must conclude that the minority approach is the fairer method of resolution. Accordingly, we adopt it here. Therefore, both companies in this case should share the loss equally until one of the policies is exhausted, at which time the other company should bear the remainder of the loss.
Reversed and remanded for entry of a judgment in accordance with the views expressed in this opinion.
ENOCH, J., concurs.
STERNBERG, J., dissents.
STERNBERG, Judge, dissenting:
I respectfully dissent.
Certainly the majority opinion is correct in declining to resurrect the Insurance Commissioner's Regulation 74-20. Had the Supreme Court wanted its opinion in Travelers Indemnity Co. v. Barnes, Colo., 552 P.2d 300 (1976), to be given only prospective application, that court would have so ordered. I also agree with the implication in the majority opinion that it is necessary to look to the language of the insurance policies because, without the Regulation, the no-fault act, §§ 10-4-701 et seq., C.R.S.1973, does not answer the issue presented by this appeal.
The issue, therefore, is whether the commercial liability policy of the rental car dealership, or the personal liability policy of the employee-driver, provides primary coverage when one of the dealer's cars is being transported in its business and is involved in an accident. My answer to this question would be to apply the commercial policy, that of Guaranty National. My analysis proceeds as follows: Budget-Rent-A-Car bought liability insurance from Guaranty National. Budget, a corporation, obviously cannot drive automobiles. Instead, when vehicles in its fleet that are not rented need to be transported from one place to another, be it from one part of a garage to a different location therein, or as here, from one city to another by necessity employees drive the cars. Here, while one of the cars was being transported by Mrs. Jensen, who often did such work for Budget and others, it was involved in an accident. Budget's policy must be considered primary. That is the basic protection Budget paid for. To *48 hold otherwise provides Guaranty National with an unwarranted windfall.[1]
Turning to the specific terms of the policy in question, it is my view that by its very language Guaranty National's excess clause is inapplicable to this situation. I do not agree with the analysis of the majority in this regard. The same legal reasoning that requires strict proof of Ohio's policy terms (see analysis of regular use and business use in the majority opinion) should lead to the conclusion that the excess clause in Guaranty National's policy does not apply. Simply stated, I cannot agree to a convoluted rewriting of Guaranty's policy to reach the conclusion that when writing its policy Guaranty National said "6" but really meant "VI". Guaranty's excess clause applies only to "temporary substitute" or "newly acquired" vehicles, i. e., additional coverages. It does not apply to situations where the policy provides primary coverageand that is what is involved here.
My conclusion in this regard is fortified by analysis of the statute requiring Budget to provide liability coverage on its vehicles. Section 10-4-706(1)(a), C.R.S.1973. Guaranty, its insurer, should not be allowed to provide something less than the coverage required by the statute. Limitation of the scope of its liability coverage by an excess clause is one of the ways in which an insurance company may attempt to escape its statutorily mandated duty. Rocky Mountain Fire & Casualty v. Allstate Insurance, 107 Ariz. 227, 485 P.2d 552 (1971). Consequently, even if Guaranty's excess clause were drafted in such a way as to make it applicable to this coverage, public policy as enunciated in our statute would void it. Rocky Mountain Fire & Casualty v. Allstate Insurance, supra.
For these reasons alone, without considering the applicability of the "regular use" and "business use" exclusions in Ohio's policy, I would affirm this judgment.
NOTES
[1] We need not face the issue of whether the Travelers court meant for Regulation 74-20 to be treated as void ab initio.
[1] In Travelers Indemnity Co. v. Barnes, supra, the case which voided the Regulation that would have made an operator's policy primary, the Supreme Court pointed out that generally an owner's policy is primary and delving into the area of rate making and other considerations of the insurance industry stated:

"Such language is based upon customary industrywide rate making and underwriting procedures. It is essential to these procedures and determination of premiums to be charged to consider the type of vehicle insured under each policy, its cost, the equipment thereof, and where (geographically) it is principally used and whether for business or pleasure. Also considered by the industry are the characteristics of the owner and those expected to drive the vehicle. These factors are material to the rights and obligations of both the insured and the insuring companies under such policies."